UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WEINER, individually and on behalf of other members of the public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OCWEN FINANCIAL CORPORATION, a Florida corporation, et al.,<br><br>Defendants. | No. 2:14-cv-2597 MCE DB<br><br>ORDER |

On November 18, 2016, this matter came before the undersigned for hearing of plaintiff's motion to compel. Attorney Mark Pifko appeared on behalf of the plaintiff and attorney Jim Bowman appeared on behalf of the defendants. Plaintiff's motion to compel seeks further production of documents with respect to four requests for production. (ECF No. 62 at 7.)

Discovery in this action is currently limited to whether this action should be certified as a class action. (ECF No. 50 at 2.) "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)). "In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" Id. at 348-49

(quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)).  Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure.

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate.  The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'"  Dukes, 564 U.S. at 349 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982)).  In this regard, in order for a class to be certified: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  See Fed. R. Civ. P. 23(a).

Rule 23(b) also allows for certification of a class if either "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," or, if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b).  "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  Amgen Inc. v. Connecticut Retirement Plans and Trust Funds, 133 S.Ct. 1184, 1191 (2013).  The plaintiff bears the burden of demonstrating that each of the elements under Rule 23(a), along with at least one component of Rule 23(b), has been satisfied.  Conn. Ret. Plans & Trust Funds v. Amgen Inc., 660 F.3d 1170, 1175 (9th Cir. 2011).

"Rule 23 does not set forth a mere pleading standard"; indeed, the "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  Dukes, 564 U.S. at 350.  Therefore, when "considering class certification under Rule 23, district courts are not only at liberty to, but must perform 'a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied.'"  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 980 (9th Cir. 2011) (quoting Dukes, 564 U.S. at 350-51).  In many cases, this rigorous

analysis will "overlap with the merits of the plaintiff's underlying claim.  That cannot be helped."  Dukes, 564 U.S. at 351.

Here, plaintiff's Requests for Production of Documents numbers 129 and 6 seeks defendants' "internal communications relating to their decision to spin-off third-party Altisource Solutions S.A. ('Altisource'). . . .'" (ECF No. 62 at 7.)  Requests for Production of Documents numbers 120 and 121 "seek documents produced by Defendants to the New York Department of Financial Services ('NYDFS') which ultimately led" to a Consent Order between defendants and the NYDFS.  (Id. at 8.)

Plaintiff argues that the internal communications discovery is:

> … highly relevant to class-certification, because Defendants' motivation for spinning-off Altisource bears directly on their classwide intent to fraudulently conceal marked-up default-related costs from consumers.  In particular, in his motion for class certification, Plaintiff intends to demonstrate to the Court that classwide evidence exists to support his allegations concerning (1) the existence of a RICO enterprise (involving Defendants, Altisource, and William Erbey); (2) the RICO enterprise's fraudulent scheme to conceal and profit from marked-up charges for default services, and (3) the exact scope of the enterprise's scheme.  It cannot reasonably be disputed that Defendants' internal communications regarding the decision to spinoff Altisource have the potential to provide this evidence and to reveal whether Defendants' fraudulent practices uniformly applied to Plaintiff and all class members, irrespective of the type of loan they had, their geographic location, or any other factors that may be unique to a particular borrower.

(Id. at 8.)  With respect to the documents defendants produced to the NYDFS, plaintiff argues that these discovery requests "bear directly on the uniformity of Defendants' practices, . . . fraudulent intent, classwide evidence of the RICO enterprise, as well as" establishing the scope of the fraudulent practices at issue and the precise timeframe.  (Id. at 9.)

It is apparent that the discovery plaintiff seeks goes to the merits of his claims — a point plaintiff essentially concedes.  (Id. at 9.)  In this regard, plaintiff has alleged that the defendants "engaged in a pattern and practice of unlawfully charging marked up prices on broker price opinions ('BPOs') and titles searches to borrowers in default," and "engaged in a scheme to disguise hidden, marked-up fees assessed to homeowners in default on their mortgages."  (Id. at 12.)  Specifically, plaintiff alleges that "[i]n furtherance of this scheme, Defendants funnel

3

default-related services, including BPOs and title searches through their affiliated businesses and mark up the cost of those services." (Id.)  "Thus, when Defendants charge homeowners for such services, Defendants are not merely being 'paid back' by borrowers or collecting 'amounts disbursed.'  Rather, Defendants have turned the BPO and title search charges into an unlawful profit center." (Id.)

As noted above, "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'"  Amgen, 133 S.Ct. at 1194 (quoting Dukes, 564 U.S. at 351).  Plaintiff asserts that the discovery at issue has such a "significant bearing on issues such as predominance and commonality," that the "fact that this information simultaneously concerns the merits . . . is insignificant" and provides defendant no basis to refuse to respond.  (ECF No. 62 at 21.)  Plaintiff, however, does not articulate how the discovery at issue bears on predominance or commonality, aside from speculative and conclusory statements such as "if the requested communications reveal a common practice applied uniformly to Plaintiff and all class members, it strongly supports class certification." (Id.)

Moreover, in support of this argument, plaintiff quotes Lindell v. Synthes USA, No. 1:11-cv-2053 LJO BAM, 2013 WL 3146806, at *6 (E.D. Cal. June 18, 2013).  (ECF No. 62 at 21.)  The discovery at issue in Lindell, however, was interrogatories and requests for production of documents seeking specific, targeted, information related to "expense reimbursement and wage deductions for the entire class."  Lindell, 2013 WL 3146806 at *5.  Here, plaintiff is not seeking specific, targeted information about the potential class.  Plaintiff is seeking defendants' internal communications concerning its business decision and all documents produced to the NYDFS in another action.

Plaintiff also cites Bias v. Wells Fargo & Co., 312 F.R.D. 528, 535 (N.D. Cal. 2015), in support of the argument that the "timeframe for the scheme, the geographic and substantive scope, and the nature of the borrowers impacted all factor into the formulation of the class definition." (ECF No. 62 at 21.)  First, plaintiff has done little to explain precisely how he thinks the discovery at issue will establish a timeframe for the scheme, its geographic and substantive scope, or the nature of the borrowers impacted.

4

1   Second, Bias is instructive in a different respect.  Bias involved allegations similar to the
2   ones present here, specifically that the defendant "added a mark-up to the BPO cost . . . which it
3   then charged borrowers."  312 F.R.D. at 532.  Plaintiffs in Bias alleged a civil RICO claim and
4   sought to certify a "Paid Class" consisting of "all residents of the United States . . . who paid for
5   one or more" BPOs charged by defendant from January 1, 2002 through July 1, 2010.  (Id. at 532-
6   33.)  The court in Bias analyzed plaintiff's motion for class certification pursuant to Rule 23,
7   including the civil RICO claim, and granted plaintiff's motion to certify a "Paid Class", in part.
8   Id. at 533-44.  Specifically, the court certified all residents of the United States who had a
9   mortgage serviced by the defendant and who paid for a BPO for an amount greater than the
10  amount the defendant paid for the corresponding BPO from February 11, 2008 through July 1,
11  2010.  Id. at 544.

12  In analyzing the plaintiff's motion for class certification in Bias, the court did not
13  reference any discovery similar to that plaintiff seeks here.  Instead, the Bias court focused on the
14  evidence that seems, to the undersigned, plainly relevant to class certification.  Specifically,
15  "common evidence, applicable classwide . . . that Defendants charged borrowers a uniform cost
16  for BPOs without regard to the actual amount it paid a third party for the service."  Id. at 536.

17  Accordingly, upon consideration of the arguments on file and at the hearing, and for the
18  reasons set forth above and on the record at the hearing, IT IS HEREBY ORDERED that
19  plaintiff's October 20, 2016 motion to compel, (ECF No. 61), is denied.

20  Dated:  November 22, 2016

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.civil\weiner2597.oah.111816

5