UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WEINER, individually and on behalf of other members of the public similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>OCWEN FINANCIAL CORPORATION, a Florida corporation, et al.,<br><br>                Defendants. | No. 2:14-cv-2597 MCE DB<br><br><br>ORDER |

On February 3, 2017, this matter came before the undersigned for hearing of defendants' motion to compel. Attorney Mark Pifko appeared on behalf of the plaintiff and attorney Jim Bowman appeared telephonically on behalf of the defendants. Defendants' motion to compel seeks further production of documents, specifically more than 60 pages of plaintiff's handwritten notes made during the servicing of his loan. (ECF No. 75 at 2.)

Discovery in this action is currently limited to whether this action should be certified as a class action. (ECF No. 50 at 2.) "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)). "In order to justify a departure from that rule, 'a class representative must be part of the class and

1

1   possess the same interest and suffer the same injury as the class members.'" Id. at 348-49

2   (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)).  Class

3   certification is governed by Rule 23 of the Federal Rules of Civil Procedure.

4        "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class

5   whose claims they wish to litigate.  The Rule's four requirements—numerosity, commonality,

6   typicality, and adequate representation—'effectively limit the class claims to those fairly

7   encompassed by the named plaintiff's claims.'" Dukes, 564 U.S. at 349 (quoting Gen. Tel. Co. of

8   Sw. v. Falcon, 457 U.S. 147, 156 (1982)).  In this regard, in order for a class to be certified: (1)

9   the class must be so numerous that joinder of all members is impracticable, (2) questions of law

10  or fact exist that are common to the class, (3) the claims or defenses of the representative parties

11  are typical of the claims or defenses of the class, and (4) the representative parties will fairly and

12  adequately protect the interests of the class.  See Fed. R. Civ. P. 23(a).

13       Rule 23(b) also allows for certification of a class if either "final injunctive relief or

14  corresponding declaratory relief is appropriate respecting the class as a whole," or, if "questions

15  of law or fact common to class members predominate over any questions affecting only

16  individual members, and that a class action is superior to other available methods for fairly and

17  efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).  "Rule 23(b)(3) requires a

18  showing that questions common to the class predominate, not that those questions will be

19  answered, on the merits, in favor of the class." Amgen Inc. v. Connecticut Retirement Plans and

20  Trust Funds, 133 S.Ct. 1184, 1191 (2013).  The plaintiff bears the burden of demonstrating that

21  each of the elements under Rule 23(a), along with at least one component of Rule 23(b), has been

22  satisfied.  Conn. Ret. Plans & Trust Funds v. Amgen Inc., 660 F.3d 1170, 1175 (9th Cir. 2011).

23       Here, plaintiff argues that his handwritten notes are not relevant to the issue of class

24  certification.  In this regard, plaintiff argues that these notes largely pre-date defendants'

25  involvement with his loan and instead concern the servicing of his loan by GMAC.  (ECF No. 75

26  at 10.)  According to plaintiff, he is not asserting any claims against GMAC, nor alleging any

27  causes of action against the defendants as successors-in-interest to GMAC.  In short, "Paintiff's

28  claims are against [the defendants] and they concern misconduct which occurred *after* Defendants

took-over as the servicer of Plaintiff's loan." (Id. at 10.)

However, as explained by defendants, plaintiff alleges that, "Ocwen misapplied Plaintiff Weiner's principal and interest payment to an escrow account established after GMAC paid Plaintiff Weiner's property taxes in 2010." (ECF No. 1 at 23.) In this regard, after GMAC established an escrow account, plaintiff "had telephone conversations GMAC staff where he arranged that he would pay his own property taxes going forward." (Id.) Plaintiff's claims against the defendants in this action derive from their application of his payments to the escrow account instituted by GMAC as a result of plaintiff's failure to pay his taxes. (ECF No. 75 at 7.)

"'The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting Hanon, 976 F.2d at 508.))

Here, plaintiff's notes concern the servicing of his loan by GMAC. Plaintiff's allegations against the defendants stem from an escrow account established by GMAC. Moreover, plaintiff has alleged that he entered into an agreement with GMAC pertaining to that escrow account. These facts may well be unique to plaintiff as opposed to the other members of the class. Accordingly, plaintiff's notes are relevant to the issue of typicality, i.e., whether the action is based on conduct which is not unique to the named plaintiff.

Plaintiff also argues that the notes at issue are protected by the attorney-client privilege and attorney work product doctrine.[1] (ECF No. 75 at 10.) There are two insurmountable hurdles to plaintiff's argument. First, plaintiff did not provide defendants with a privilege log until six

---

[1] At the February 3, 2017 hearing, plaintiff's counsel clarified he is not asserting that the documents are attorney work product.

3

months after plaintiff's production, on the eve of plaintiff's deposition.[2] (Id. at 3.) That log had a single, categorical entry for the documents explaining that they were created on "[v]arious" dates and describing them all as simply a "[c]ollection of handwritten notes prepared by Plaintiff for counsel in anticipation of, and to assist with the present litigation." (ECF No. 75-1 at 7.) Plaintiff later updated the log with individual, largely dated, entries, but all with the singular description of "[h]and-written notes prepared by Plaintiff for counsel in anticipation of, and to assist with litigation." (Id. at 32-34.)

"Although the failure to timely produce a privilege log does not result in a per se waiver of the privilege, a court makes a case-by case assessment to determine whether a party's untimeliness waived the privilege." Loop AI Labs Inc v. Gatti, Case No. 15-cv-0789 HSG, 2016 WL 3001158, at *2 (N.D. Cal. May 25, 2016). The case-by case assessment should consider:

> the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005); see also Burch v. Regents of University of Cal., No. CIV. S-04-0038 WBS GGH, 2005 WL 6377313, at *2 (E.D. Cal. Aug. 30, 2005) (finding 6-month delay in producing privilege log "presumptively untimely absent mitigating considerations").

Here, the undersigned cannot find that any of the Burlington factors appear to way in plaintiff's favor. In this regard, it appears plaintiff provided boilerplate objections. (ECF No. 75-1 at 39-40.) The log was six months untimely. Only 60 pages are at issue. Plaintiff fails to even address this issue in the joint statement, despite the fact that it was one of the defendants' key

---

[2] At the February 3, 2017 hearing, plaintiff's counsel acknowledged that he possessed these documents at the time of his production on June 17, 2016.

arguments. (ECF No. 75 at 5.)

Moreover, "a party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009) (quoting United States v. Bauer, 132 F.3d 504, 507 (9th Cir. 1997)); see also United States v. Bergonzi, 216 F.R.D. 487, 493 (N.D. Cal. 2003) ("The party asserting the privilege must make a prima facie showing the privilege protects the information the party intends to withhold."). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." Bauer, 132 F.3d at 507 (quoting United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002)).

An eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting Ruehle, 583 F.3rd at 607). "The party asserting the privilege bears the burden of proving each essential element." Ruehle, 583 F.3d at 608.

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (internal citations omitted). "[T]here is general agreement that the protection of the privilege applies only if the primary or predominate purpose of the attorney-client consultations is to seek legal advice or assistance." United States v. Salyer, 853 F.Supp.2d 1014, 1018 (E.D. Cal. 2012); see also In re County of Erie, 473 F.3d 413, 420-21 (2d Cir. 2007) ("We consider whether the predominant purpose of the communication is to render or solicit legal advice . . . . The predominant purpose of a communication cannot be ascertained by quantification or classification of one passage or another; it should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-

1 lawyer."); North Pacifica, LLC v. City of Pacifica, 274 F.Supp.2d 1118, 1127 (N.D. Cal. 2003) ("In general, legal advice is implicated if the nonlegal aspects of the consultation are integral to the legal assistance given and the legal assistance is the primary purpose of the consultation."). "In the context of the attorney-client privilege, 'legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.'" Koumoulis v. Independent Financial Marketing Group, Inc., 295 F.R.D. 28, 37 (E.D. N.Y. 2013) (quoting Erie, 473 F.3d at 419)).

"The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." United States v. Christensen, 828 F.3d 763, 805 (9th Cir. 2015) (quotation omitted). "To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" Richey, 632 F.3d at 567 (quoting In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf), 357 F.3d 900, 907 (9th Cir. 2004)).

Here, plaintiff's argument fails to provide the court with any specific information about why these documents—which date as far back as three years prior to the time plaintiff was represented and two years prior to the time defendants began servicing plaintiff's loan—are privileged.[3] Instead, both in his arguments in the joint statement and at the February 3, 2017 hearing, plaintiff's counsel simply relies on the bare assertion that these notes were prepared in anticipation of litigation and provided to counsel.

////
////
////
////
////

---

[3] Particularly in light of the fact that plaintiff has strenuously argued that plaintiff's claims against the defendants concern only defendants' conduct and not the conduct of GMAC. (ECF No. 75 at 9-10.)

Accordingly, upon consideration of the arguments on file and at the hearing, and for the reasons set forth above and on the record at the hearing, IT IS HEREBY ORDERED that:

1) Defendants' January 6, 2017 motion to compel (ECF No. 73) is granted; and

2) Plaintiff shall provide the responsive documents within fourteen days of the date of this order.

Dated:  February 6, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.civil\weiner2597.oah.020317