# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

DAVID WEINER, individually, and on behalf of other members of the public similarly situated,

              Plaintiff,

vs.

OCWEN FINANCIAL CORPORATION, a Florida corporation and OCWEN LOAN SERVICING, LLC, a Delaware limited liability company,

              Defendants.

Case No.: 2:14-cv-02597-MCE-DB

**STIPULATED ESI PROTOCOL**

This Order Regarding Production Of Electronically Stored Information And Paper Documents ("ESI Protocol") shall govern the parties in the above-captioned case, Plaintiff David Weiner, on behalf of himself and the certified class ("Plaintiff") and Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC (collectively, the "Parties") (collectively, the "Litigation").

## I. GENERAL PROVISIONS

**1. Applicability.** This Order will govern the production of computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape or other real or virtualized devices or media ("ESI") and the production of paper documents. However, except as set forth expressly herein, nothing in this order shall be construed as requiring or implying that the preservation, collection or production of any particular type or category of ESI mentioned herein is required or not required.

**2. Cooperation.** The parties agree to cooperate in good faith and to use reasonable efforts in carrying out the terms of this order. The parties will coordinate in good faith to fashion reasonable, precise and cost-effective search strategies and implement appropriate measures for quality assurance and quality control. Parties are encouraged to be forthcoming and to bring technically-adept personnel together to resolve e-discovery issues.

**3. Time Frame for ESI Issue Resolution:** Each party agrees to acknowledge receipt of an ESI-related inquiry from another party regarding an ESI issue within 48 hours, and shall seek to respond substantively as soon as is practical using reasonable efforts and diligence.

**4. Production Media & Protocol.** The production media for document productions that do not exceed 5 GB shall be secure FTP link provided via email at the time a production letter is emailed, unless the parties agree otherwise. On the occasions when a particular document production exceeds 5 GB, the production media may be a CD-ROM, DVD, external hard drive (with standard PC compatible interface),

or USB drive, so long as such production media is sent no slower than overnight delivery via FedEx, UPS, or USPS. Each item of production media (or in the case of FTP productions, each production transmittal letter) shall include: (1) text referencing that it was produced in *David Weiner v. Ocwen Financial Corp., et al.*,(2) the type of materials on the media (*e.g.*, "Documents," "OCR Text," "Objective Coding," etc.), (3) the production date, (4) the Bates number range of the materials contained on such production media item, and (5) a short description of the categories of information in the production ESI (*e.g.*, Custodian X's email, centralized purchasing files, etc.). The ESI Liaisons shall designate the appropriate physical address for productions exceeding 5 GB that are produced on physical media.

**5.** **Definitions.**

**a.** **"Custodial ESI":** The phrase Custodial ESI refers to ESI associated with a particular individual, such as email authored or received by a Document Custodian, on a Document Custodian's cell phone.

**b.** **"Documents"** includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records or data compilations, which are stored in any medium from which information can be obtained.

**c.** **"Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape or other real or virtualized devices or media. Non limiting examples of ESI include:

    i.   Digital communications (*e.g.*, e-mail, voice mail, text messaging, instant messaging, and ephemeral messaging (SnapChat, etc.));

    ii.   E-Mail Server Stores (*e.g.*, Lotus Domino .NSF or Microsoft Exchange .EDB)

    iii.   Word processed documents (*e.g.*, Word or WordPerfect files and drafts);

    iv.   Spreadsheets and tables (*e.g.*, Excel or Lotus 123 worksheets);

| | | |
|---|---|---|
| 1 | v. | Accounting Application Data (*e.g.*, QuickBooks, Money, |
| 2 | | Peachtree data); |
| 3 | vi. | Image and Facsimile Files (*e.g.*, .PDF, .TIFF, .JPG, .GIF images); |
| 4 | vii. | Sound Recordings (*e.g.*, .WAV and .MP3 files); |
| 5 | viii. | Video and Animation (*e.g.*, .AVI and .MOV files); |
| 6 | ix. | Databases (*e.g.*, Access, Oracle, SQL Server data, SAP); |
| 7 | x. | Contact and Relationship Management Data (*e.g.*, Outlook, ACT!); |
| 8 | xi. | Calendar and Diary Application Data (*e.g.*, Outlook PST, blog |
| 9 | | entries); |
| 10 | xii. | Online Access Data (*e.g.*, Temporary Internet Files, History, |
| 11 | | Cookies); |
| 12 | xiii. | Presentations (*e.g.*, PowerPoint, Corel Presentations) |
| 13 | xiv. | Network Access and Server Activity Logs; |
| 14 | xv. | Project Management Application Data; |
| 15 | xvi. | Computer Aided Design/Drawing Files; |
| 16 | xvii. | Backup and Archival Files (*e.g.*, Veritas, Zip, .GHO); and |
| 17 | xviii. | Cloud based or other virtualized ESI, including application, |
| 18 | | infrastructure and data. |

19     **d. "Metadata"** means and refers to information about information or data about

20     data, and includes without limitation (i) information embedded in or

21     associated with a native file that is not ordinarily viewable or printable from

22     the application that generated, edited, or modified such native file which

23     describes the characteristics, origins, usage and/or validity of the electronic

24     file and/or (ii) information generated automatically by the operation of a

25     computer or other information technology system when a native file is

26     created, modified, transmitted, deleted or otherwise manipulated by a user of

27     such system.

28

**e. "Static Image"** means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

## II. RULE 26(a) ESI DISCLOSURES

Within twenty-one (21) days of the date the Court enters this Order, each party shall comply with its initial disclosure obligations under Rule 26(a) and disclose all custodial and non-custodial data sources which are likely to contain discoverable information.

## III.  GENERAL PRODUCTION FORMAT PROTOCOLS

**1.  TIFFs.**  All production images will be provided as single page Group IV TIFFs of at least 300 dpi resolution.  Page size shall be 8.5 x 11 inches unless in the reasonable judgment of the producing party, a particular item requires a different page size.  Each image will use the Bates number of the first page of the document as its unique file name. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape).  Hidden content, tracked changes or edits, comments, notes and other similar information viewable within the native file shall also be imaged so that this information captured on the produced image file.

**2.  Text Files.**  Each paper document or ESI item produced under this order shall be accompanied by a text file as set out below.  All text files shall be provided as a single document level text file for each item, not one text file per page.  Each text file shall be named to use the Bates number of the first page of the corresponding production item.

**a.  OCR:**  Paper documents will be accompanied by an OCR file.  The parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology.   The parties acknowledge, however, that due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.  OCR text files should indicate page breaks where possible.

**b.** **ESI:** Emails and efiles will be accompanied by extracted text taken from the ESI item itself.

**3.** **Designation of Deposition Testimony.**

**a.** All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length (0-padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document.

**b.** If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

**c.** The producing party will brand all TIFF images in the lower right-hand corner with its corresponding bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

**4.** **Parent-Child Relationships.** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved. For example, if a party is producing a hard copy printout of an e-mail with its attachments, the attachments should be processed in order behind the e-mail.

**5.** **Load Files.** All production items will be provided with a delimited data file or "load file." Acceptable formats for the load file are .log, .opt, .dii .lfp, .txt, .dat, or .csv, as detailed in Appendix 1. Each party will designate its preferred load file format. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the

production.  Each deliverable volume should limit directory contents to approximately 1000 files per folder.

**6.** **<u>Color.</u>** Paper documents or redacted ESI that contain color necessary to decipher the meaning, context, or content of the document or ESI shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. If an original color image is produced in black and white, the receiving party may for good cause request the producing party to produce the image in color. If the producing party reasonably anticipates that it may use or rely on a color version of a document it shall produce that document in color, in the same resolution and quality as it intends to use or rely on.

**7.** **<u>De-duplication.</u>**

**a.** If a producing party elects to de-duplicate horizontally, all custodians who were in possession of a de-duplicated document must be identified in the CustodianOther, LogicalPathOther, FileNameOther metadata fields specified in Appendix 2.  Additionally, all BCC recipients whose names would have been included in the BCC metadata field but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix 2.  In the event of rolling productions of documents or ESI items, the producing party will supplement the load files with updated CustodianOther and BCC information as needed.

**b.** Duplicates shall be identified by industry standard MD5 or SHA-1 hash value only. A producing party that elects to de-duplicate emails must identify the email fields which will be concatenated into the values upon which the hash values will be calculated.

**8.** **<u>Confidentiality Designations.</u>** If a particular paper document or ESI item qualifies for confidential treatment pursuant to the terms of a Protective Order entered by the Court in this litigation, or has been redacted in accordance with applicable law or Court order, the designation shall be shown both on the face of all

TIFFs pertaining to such item/document, and in the appropriate data field in the load file.

### IV.    <u>PRODUCTION OF PAPER DOCUMENTS</u>

**1.**    The parties agree that responsive paper documents from Document Custodians will be scanned and produced electronically rather than in paper format. Generally all centralized paper documents will be scanned and produced electronically, unless a party establishes good cause for making such documents available via paper and reasonable access is provided to the opposing party to review the documents directly.

**2.**    **<u>Coding Fields.</u>**  The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) PgCount, (f) Custodian, (g) Source Party, (h) TextPath, (i) Confidentiality, and (j) Redacted (Y/N). Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y."

**3.**    **<u>Unitization of Paper Documents.</u>**  Paper documents should be logically unitized for production.  Therefore, when scanning paper documents for production, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records.

**4.  File/Binder Structures.**

**a.  Unitization:**  Where the documents were organized into groups, such as folders, clipped bundles and binders, this structure shall be maintained and provided in the load file.  The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields.  The parties will make their best efforts to unitize documents correctly.

**b.  Identification:**  Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

**c.  Custodian Identification:**  The parties will utilize best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates stamp order.

**V.  FORMAT OF PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

**1.  System Files.**  ESI productions may be de-nisted using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology.

**2.  Metadata Fields and Processing.**

**a.  Time zone:**  ESI items shall be processed in a manner that preserves their existing time, date, and time-zone metadata (*e.g.*, the email of a Document Custodian located in Pennsylvania will be processed as Eastern Time, while a Document Custodian located in California will be processed as West Coast Time).  If GMT time zone is used, then a time-zone offset metadata field must be provided indicating the original time zone in which the custodian of the document received or authored the document.

**b.    Auto date/time stamps:**  ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

**c.**    Except as otherwise set forth in this Order, *infra*, ESI files shall be produced with at least each of the data fields set forth in Appendix 2 that can be extracted from a document.

**d.**    The parties are not obligated to manually populate any of the fields in Appendix 2 if such fields cannot be extracted from the document using an automated process, with the exception of the following fields:  (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Redacted (Y/N), (h) AttachCount, (i) AttachName, (j) PGCount, and (k) NativeLink fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

**e.**    With respect to the italicized fields in Appendix 2, a producing party need produce only those fields that it can provide (or can provide without additional cost) if it (a) provides the receiving party or parties with a good faith, written representation describing the fields it cannot provide or cannot provide without additional cost, and (b) agrees not to use any of the requested fields that it did not produce.  The parties will meet and confer in good faith to the extent that additional issues arise.

**3.    <u>Production of Native Items.</u>**  The parties agree that ESI shall be produced as TIFFs with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 2 hereto.  The exception to this rule shall be spreadsheet-application files (*e.g.*, MS Excel), personal databases (*e.g.*, MS Access), and multimedia audio/visual files such as voice and video recordings (*e.g.*, .wav, .mpeg, and .avi), for which all ESI items shall be produced in native format. In the case of personal database (*e.g.*, MS Access) files containing confidential or privileged information, the parties shall meet and confer to determine the appropriate form of production. In addition to producing the above file types in

9

native format, the producing party shall produce a single-page TIFF slip sheet indicating that a native item was produced and providing the file name of the natively produced document (*e.g.*, "Order.docx"). The corresponding load file shall include NativeFileLink information for each native file that is produced. Further, the parties agree to meet and confer prior to producing native file types other than MS PowerPoint, MS Excel, and multimedia audio/visual file types such as .wav, .mpeg and .avi. Prior to processing non-standard native files for production, the producing party shall disclose the file type to, and meet and confer with, the receiving party on a reasonably useable production format. The parties agree to meet and confer to the extent that there is data in database application files, such as SQL and SAP, to determine the best reasonable form of production of usable data. Through the pendency of this Litigation, the producing party shall exercise reasonable, good faith efforts to maintain all preserved and collected native files in a manner that does not materially alter or modify the file or the metadata.

**4.** __Requests for Other Native Files.__ Other than as specifically set forth above, a producing party need not produce documents in native format. If a party would like a particular document produced in native format, and this order does not require the production of that document in its native format, the receiving party shall make a request to the producing party that the document be produced in native format. All such requests shall be complied with by the producing party, unless there is good cause to deny any such requests. The requesting party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 2.

**5.** __Redaction.__

**a.** The parties agree that where ESI items need to be redacted, they shall be produced solely in TIFF with each redaction clearly indicated, except in the case of personal database files, which shall be governed by ¶ V(3), *supra*. Any unaffected

data fields specified in Appendix 2 shall be provided.  For example, if attorney-client privilege requires that the BCC field of a document needs to be redacted, all other available data fields specified in Appendix 2 shall be provided and the redacted metadata fields will be clearly indicated.

**b.**    If the items redacted and partially withheld from production are Excel-type spreadsheets as addressed in ¶ V(3), *supra*, and the native items are also withheld, the entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields and other information that does not print when opened as last saved by the custodian or end-user. For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations and notes. The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible. For example, column widths should be formatted so that the numbers in the column will display rather than "##########."

**c.**    If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unredacted portions of the content.  If the content is a voice recording, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unredacted portion of the content.

**6.**    **Exception Files:**  The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files").  The Parties will meet and confer regarding procedures that will be used to identify, access, and process Exception Files.

# VI. COLLECTING ELECTRONIC DOCUMENTS SEARCH METHODOLOGY

**1.** **Identification and Search Methodology.** The parties will meet and confer in good faith on the methodology (e.g., keyword/Boolean search, technology-assisted review (TAR) such as concept search, predictive coding, etc.) and implementation (e.g., search terms, etc.) to be used to identify, process, and classify ESI for production, before any such methodology and/or implementation is applied to the ESI collection. The parties also agree to meet and confer in good faith regarding the identification of key persons and data sources of interest and third parties who may have relevant evidence within their possession, custody or control.

# VII. SPECIAL ESI ISSUES

**1.** **Password-Protected or Encrypted Files.** With respect to any ESI items that are password-protected or encrypted, the Producing Party will take reasonable steps based on industry standards to break the protection so that the document can be reviewed and/or produced. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to the requesting party's document requests, remain for a particular custodian after such reasonable efforts have been made, the producing party shall let the receiving party know the total number of such documents and each individual producing party shall meet and confer with the receiving party.

**2.** **Hidden text.** ESI items processed after the execution date of this Production Order shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

**3.** **Embedded Objects.** Objects embedded in Microsoft Word and .RTF documents, which have been embedded with the "Display as Icon" feature, will be extracted as separate documents and treated like attachments to the document. Other objects embedded in documents shall be produced as native files.

**4.** **Compressed Files.** Compression file types (*i.e.*, .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**VIII.** **CLAIMS OF PRIVILEGE AND REDACTIONS**

**1.** **Production of Privilege Logs.** For any document withheld in its entirety or produced but redacted, the producing party will produce privilege/redaction logs in Excel format or any other format that permits electronic sorting and searching, except that the Parties shall have no obligation to log information generated after the date of commencement of this lawsuit. A producing party will produce a separate privilege/redaction log for each production within 14 days of the production of documents for which a privilege is asserted. Privilege logs will contain at least the following metadata fields: Custodian, Author/From, To, CC, BCC, Subject, File Name, File Path, Date Sent/Created, Date Last Modified, Basis of Withholding/Redaction. If there is more than one redaction, each redaction shall be addressed in the log with sufficient information to allow a receiving party to understand the basis for the redactions. In-house attorney names shall be designated with an asterisk; outside counsel attorney names will be designated with a double asterisk.

**2.** **"Relevancy" Redactions.** The parties will not make any redactions based upon the purported relevancy of a document.

**3.** All other issues of privilege, including the production of privileged or protected documents or information, shall be governed by the Protective Order entered by the Court in this litigation. Officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this Protocol.

**IX.** **MISCELLANEOUS PROVISIONS**

**1.** **Objections Preserved.** Nothing in this protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-

product doctrine, or any other applicable privilege or immunity.  Except as provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

**2.  Modifications.**  Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical production of documents or ESI.

**3.  Production of Structured Data.**  To the extent a response to discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the parties shall meet and confer to, with an understanding of which fields are relevant, agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file (*e.g.*, Excel or CSV format) for review by the requesting party or counsel.  Upon review of the report(s), the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

**4.  Inaccessible ESI.**  If a producing party asserts that certain ESI is inaccessible or otherwise unnecessary under the circumstances, or if the requesting party asserts that, following production, certain ESI is not reasonably usable, the parties shall meet and confer with their respective technology experts to discuss resolving such assertions.  If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue may be presented to the Court for resolution.

**5.  Lost, Destroyed or Irretrievable ESI.** If a party believes that responsive ESI for which there was an obligation to preserve no longer exists in its original format, or is no longer retrievable, the party will disclose where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that

information is available from other sources, and whether any backup or copy of such original responsive ESI exists.

      **6.**     No party shall modify the date or time as contained in any original ESI.

**IT IS SO ORDERED.**

**Dated:  April 5, 2018**

 

 

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

## Appendix 1: File Formats

**Image Load Files**

The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (*e.g.*, ABC001.LFP).

The volume names should be consecutive (*i.e.*, ABC001, ABC002, *et seq.*).

There should be one row in the load file per TIFF image.

Every image in the delivery volume should be contained in the image load file.

The image key should be named the same as the Bates number of the page.

Load files should not span across media (*e.g.*, CDs, DVDs, Hard Drives, Etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

Files that are the first page of a logical document should include a "D" where appropriate.  Files that are the first page of an attachment to an e-mail should include a "C" where appropriate. Subsequent pages of all documents (regular document, e-mail, or attachment) should include a blank in the appropriate position.

1    IM,VN00000001,D,0,@29502601;295026001\0000;VN00000001.TIF;2

2    IM,VN00000002, ,0,@29502601;295026001\0000;VN00000002.TIF;2

3    IM,VN00000003, ,0,@29502601;295026001\0000;VN00000003.TIF;2

4    IM,VN00000004, ,0,@29502601;295026001\0000;VN00000004.TIF;2

5    IM,VN00000005,D,0,@29502601;295026001\0000;VN00000005.TIF;2

6    IM,VN00000006, ,0,@29502601;295026001\0000;VN00000006.TIF;2

7    IM,VN00000007, ,0,@29502601;295026001\0000;VN00000007.TIF;2

8    IM,VN00000008, ,0,@29502601;295026001\0000;VN00000008.TIF;2

9    IM,VN00000009,D,0,@29502601;295026001\0000;VN00000009.TIF;2

10   IM,VN00000010, ,0,@29502601;295026001\0000;VN00000010.TIF;2

Opticon Delimited File:

13   MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3

14   MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,Y,,,,

15   MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,Y,,,,

16   MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2

17   MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,Y,,,,

Summation DII File:

20   @C HASIMAGE YES

21   @T EPRG036023 2

22   @DD:\FILES\PRODUCTION\CD0004\VOL0011\Images

23   EPRG036023.tif

24   EPRG036024.tif

**Concordance Delimited Files:**

27       þBegDocþþEndDocþþBegAttachþþEndAttachþþPgCountþþCustodianþ

The data load file should use standard Concordance delimiters:

Comma - ¶ (ASCII 20);

Quote - þ (ASCII 254);

Newline - ® (ASCII174).

The first record should contain the field names in the order of the data.

All date fields should be produced in mm/dd/yyyy format.

Use carriage-return line-feed to indicate the start of the next record.

Load files should not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered.

The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (*i.e.*, ABC001.DAT).

The volume names should be consecutive (*i.e.*, ABC001, ABC002, *et seq*.).

If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format.

**OCR / Extracted Text Files**

OCR or Extracted Text files shall be provided in a separate \OCR\ directory containing Document level text files

If Foreign Language / Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format

# Appendix 2: ESI Metadata and Coding Fields

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact or All*) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production bates number of the last document of the family). |
| PgCount | All | Page Count. |
| Custodian | All | Custodian name (ex. John Doe). |
| CustodianOther | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| Size | All | Size (in bytes) of the original document. |
| LogicalPath | All | The directory structure of the original file(s), including email folders for emails. Any container name is included in the path. |
| LogicalPathOther | All | The directory structures, including container names, of the de-duplicated files in the possession of all custodians besides the individual identified in the "Custodian" field in the same order as those Custodians are listed in the CustodianOther field. |
| Hash | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |

---

[1] Field names can vary from system to system and even between different versions of systems. Thus, parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this Order.

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact or All*) | Field Description |
|---|---|---|
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that permits email threading in review software |
| Thread Index | Email | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Contact, Calendar, Edoc | Date the document was last modified. |
| TimeMod | Email, Contact, Calendar, Edoc | Time the document was last modified. |
| TimeSent | Email | Time email was sent. |
| ReceiveDate | Email | Date email was received. |
| ReceiveTime | Email | Time email was received. |
| To | Email, Calendar | All recipients that were included on the "To" line of the email. |

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact or All*) | Field Description |
|---|---|---|
| From/Author | Email, Calendar, Contact, Edocs | The name, and email address, of the sender of the email, author of a edoc, calendar item or contact |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| AttachmentCount | Email | Number of attached documents. |
| Attach | Email | The file name(s) of the attached documents. |
| Importance Ranking | Email | Level of importance/sensitivity of messages. |
| Follow- Up Flags | Email | Tracks responses to messages that were sent and follow up on messages that were received. |
| Status as READ or UNREAD | Email | Whether or not a message was READ or UNREAD. |
| GUID/$Message ID | Email | The unique Email message identifier (to extent different from "Email Conversation Threading Index Number" noted above). |
| ID of Original Message REPLIED to or FORWARDED | Email | The unique Email message identifier of the previous message in the thread (the message that was replied to or forwarded). |

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact or All*) | Field Description |
|---|---|---|
| Agent ID | Email | If the item was created by someone on behalf of the email box owner, ID of the agent who created/sent the item. |
| DateCreated | Edoc, Contact | Date the document was created. |
| TimeCreated | Edoc, Contact | Time the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| FileNameOther | Edoc | File names of the de-duplicated files in the possession of all custodians besides the individual identified in the "Custodian" field in the same order as those Custodians are listed in the CustodianOther field. |
| Title/Subject | Edoc, Calendar | Any value populated in the Title,subject field of the document properties or calendar entry |
| | | |
| | | |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file specified in Paragraph I.C of this ESI Order. |
| Redacted | All | "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| | | |

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact or All*) | Field Description |
|---|---|---|
| | | |
| Name Fields | Contact | All names associated with contact entry (such as first, last, middle, nicknames, prefix, suffix, etc.) |
| Email Aliases | Contact | For example, the name or reference that will display in the email address lines in place of the actual email address |
| Phone Numbers | Contact | All phone numbers associated with the contact entry |
| Addresses | Contact | All physical/mailing addresses associated with the contact entry |
| URL addresses | Contact | All URL addresses associated with the contact entry |
| Notes/Journal Field | Contact | All free text entered by user that is associated with and reflected in contact entry |
| Other Contacts | Contact | Identification of other contact entries associated with and reflected in the contact entry, such as contact entry's assistant or manager |
| Contact Tracking | Contact | Track contacts made with the person or entity shown in the contact entry, such as date and/or time and type of contact. |
| Importance Ranking | Contact | Level of importance/sensitivity of the contact entry |
| Follow-Up Flags | Contact | Tracks responses to contact entries that were sent and follow up on contact entries that were received. |
| Categories/ Groups | Contact | Specific fields designed to sort, filter or classify the contact entry |
| | | |
| | | |
| | | |
| | | |

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact or All*) | Field Description |
|---|---|---|
| | | |
| Other fields associated with the date, time and place of the calendar entry | Calendar | For example, address and room designations for physical location meetings; dial-in information or web addresses for phone conferences and virtual meetings. |
| Notes/Journal Field | Calendar | All free text entered by user that is reflected in the calendar entry |
| Importance Ranking | Calendar | Level of importance/sensitivity of the calendar entry |
| Follow- Up Flags | Calendar | Tracks responses to contact entries that were sent and follow up on contact entries that were received. |
| Categories/ Groups | Calendar | Specific fields designed to sort, filter or classify calendar entries |
| Response Category | Calendar | The response to a calendar or meeting invitation (such as tentative or accepted) |

STIPULATED ESI PROTOCOL