RICHARD A. JACOBSEN (STATE BAR NO. 4282182)
(PRO HAC VICE)
rjacobsen@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
Telephone:     (212) 506-5000

MELINDA L. HAAG (STATE BAR NO. 132612)
mhaag@paulweiss.com
RANDALL S. LUSKEY (STATE BAR NO. 240915)
rluskey@ paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
545 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone:     (628) 432-5112

Attorneys for Defendants
Ocwen Financial Corporation and
Ocwen Loan Servicing, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WEINER, individually, and on behalf of other members of the public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OCWEN FINANCIAL CORPORATION, a Florida corporation, and OCWEN LOAN SERVICING, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 2:14-cv-02597-TLN-DB<br><br>**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANTS' MOTION FOR DECERTIFICATION**<br><br>Judge:        Hon. Troy L. Nunley<br>Location:     Courtroom 2<br>Action Filed: November 5, 2014 |

1        Defendants respectfully submit the attached Published Opinion in *Maddox v. Bank of New*

2  *York Mellon Tr. Co., N.A.*, --- F.4th ---, 2021 WL 5347004 (2d Cir. Nov. 17, 2021), as

3  supplemental authority in support of their motion for decertification, ECF 194.  In that case, the

4  U.S. Court of Appeals for the Second Circuit held that two named plaintiffs in a putative class

5  action no longer had Article III standing after *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190

6  (2021), and remanded with instructions to dismiss the case.

7        *Maddox* provides further support for the decertification of Plaintiff's class, and dismissal

8  of his claims.  The Second Circuit first notes that *TransUnion*'s central holding, "no concrete

9  harm, no standing," 141 S.Ct. at 2200, "leaves little room for interpretation," Slip. Op. 12.  Since

10  the *Maddox* plaintiffs had not pointed to any concrete harm resulting from the defendant's delay

11  in recording the discharge of their mortgages, the plaintiffs lacked Article III standing.  Slip. Op.

12  16.  For instance, the purported adverse impact this delay had on plaintiffs' credit was insufficient

13  to confer standing because the plaintiffs had not pointed to any concrete harm that "materialized"

14  as a result.  Slip. Op. 19.  In short, after *TransUnion*, a "nebulous risk of future harm …. which

15  was not alleged to have materialized[] cannot form the basis of Article III standing."  Slip. Op.

16  18-19.

17        *Maddox* makes clear that borrowers in Plaintiff's class who did not pay any fees, and who

18  thereby suffered no concrete harm, can no longer be members of the class, necessitating

19  decertification.  *Maddox* also further undermines Plaintiff's argument that members of the class

20  who merely had fees assessed to their accounts have standing regardless of whether they paid any

21  fees.  *See* Opp. 19.  In addition, *Maddox* illustrates that where, as here, the named plaintiff lacks

22  Article III standing, the case should be dismissed.  Slip. Op. 22.

23        *Maddox* illustrates the widespread impact of *TransUnion* on Article III standing

24  requirements.  Prior to *TransUnion*, the same Second Circuit panel had held that the *Maddox*

25  plaintiffs had Article III standing.  The panel reached the opposite conclusion after considering

26  the impact of *TransUnion*, withdrawing its prior opinion and substituting the attached opinion in

27  its place.  Slip. Op. 9-10.  This Court should similarly reevaluate whether class certification is

28  appropriate after *TransUnion*, decertify the class, and dismiss Plaintiff's claims.

1

2

3  Dated: November 19, 2021

RICHARD A. JACOBSEN
Orrick, Herrington & Sutcliffe LLP

4

5

By:  _____ */s/ Richard A. Jacobsen*_____
RICHARD A. JACOBSEN
RANDALL S. LUSKEY
MELINDA L. HAAG

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19-1774-cv
<u>Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.</u>

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2019

(Argued: March 26, 2020                    Decided:     November 17, 2021)

Docket No. 19-1774

_____

SANDRA MADDOX, TOMETTA MADDOX HOLLEY, on behalf of themselves
and all others similarly situated,

<u>Plaintiffs-Appellees,</u>

v.

THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,

<u>Defendant-Appellant.</u>

_____

Before: JACOBS, POOLER, and CARNEY, <u>Circuit Judges</u>.

Appeal from an order of the United States District Court for the Western

District of New York (Arcara, <u>J.</u>) denying the motion of the Bank of New York

Mellon Trust Company ("BNY Mellon" or "the Bank") for judgment on the

pleadings.  The district court concluded that plaintiffs have Article III standing to sue BNY Mellon for violating the timely recordation requirements imposed by New York State's mortgage-satisfaction-recording statutes and certified the question for interlocutory appeal.

On review, we hold that the Maddoxes' allegations fail to support their Article III standing, and that they may not pursue their claims for the statutory penalties imposed by the New York Legislature in federal court.

Order vacated and case remanded.

———————————

JONATHAN M. ROBBIN (Deborah A. Skakel, <u>on the letter brief</u>), Blank Rome LLP, New York, NY, <u>for Defendant-Appellant Bank of New York Mellon Trust Company</u>.

SETH R. LESSER, Klafter Olsen & Lesser LLP, Rye Brook, NY, <u>for Plaintiffs-Appellees Maddox et al.</u>

ERIC LECHTZIN, Berger & Montague, P.C., Philadelphia, PA (<u>on the brief</u>), <u>for Plaintiffs-Appellees Maddox et al</u>.

CHARLES MARSHALL DELBAUM, National Consumer Law Center, Boston, MA (<u>on the brief</u>), <u>for Plaintiffs-Appellees Maddox et al.</u>

> William Alvarado Rivera, Julie Nepveu, AARP
> Foundation, Washington, DC, and Brian L. Bromberg,
> Joshua Tarrant-Windt, Bromberg Law Office, P.C., New
> York, NY, <u>for</u> AARP, AARP Foundation, and National
> Association for Consumer Advocates, <u>amici curiae in
> support of Plaintiffs-Appellees Maddox et al</u>.

DENNIS JACOBS, <u>Circuit Judge</u>:

The Bank of New York Mellon Trust Company ("BNY Mellon" or "the Bank") appeals from an order of the United States District Court for the Western District of New York (Arcara, <u>J.</u>) denying its motion for judgment on the pleadings. The district court held that plaintiffs Sandra Maddox and Tometta Maddox Holley (the "Maddoxes") have Article III standing to seek statutory damages from the Bank for its violation of New York's mortgage-satisfaction-recording statutes (the "statutes"). N.Y. Real P. Law ("R.P.L.") § 275; N.Y. Real P. Actions & Proc. L. ("R.P.A.P.L.") § 1921. These statutes require mortgage lenders to record satisfactions of mortgage (also known as "certificates of discharge") within thirty days of the borrower's repayment; a failure to record renders the lender "liable to the mortgagor" for escalating statutory damages in amounts dependent on the delay in the ultimate filing. Here, the Bank did not record the satisfaction of the Maddoxes' mortgage, in an amount of over $50,000, until

3

almost one year after full payment was received—nearly eleven months later than the law allows.  For the filing of a satisfaction over ninety days after discharge, the lender becomes liable to the mortgagor for $1,500.  R.P.L. § 275(1); R.P.A.P.L. § 1921(1).  The Maddoxes sued to collect that penalty and to represent a putative class of similarly wronged borrowers.

The district court certified for interlocutory appeal the question whether the Maddoxes have Article III standing to sue the Bank for the statutory damages and other relief.  Our initial opinion on this appeal, <u>Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.</u>, 997 F.3d 436 (2d Cir. 2021), was the subject of a motion for rehearing in light of the intervening authority of <u>TransUnion LLC v. Ramirez</u>, --- U.S. ---, 141 S. Ct. 2190 (2021).  After briefing on the impact of <u>TransUnion</u>, we grant the motion for rehearing and issue the instant opinion.

We now hold that the Maddoxes' allegations fail to support Article III standing, and that they may not pursue their claims for the statutory penalties imposed by the New York Legislature in federal court.

Accordingly, we vacate the district court's order denying BNY Mellon's motion for judgment on the pleadings and remand with instructions that the case be dismissed.

4

## BACKGROUND

I.      **The complaint's allegations.**

The Maddoxes' complaint alleges the following facts, which we accept as true for purposes of this appeal.  See Lynch v. City of New York, 952 F.3d 67, 74-75 (2d Cir. 2020).

On October 6, 2000, sisters Sandra Maddox and Tometta Maddox Holley entered into a mortgage loan with Aegis Mortgage Corporation (the "Loan").  The mortgage and assignment were recorded with the Erie County Clerk's Office.  The mortgage encumbered the Maddoxes' property at 149 Hampshire Street, Buffalo, New York 14213 (the "Property").  The Loan was later assigned to BNY Mellon.  In September 2014, the Maddoxes sold the Property to individuals who are not parties to this suit.

On or about October 5, 2014, the Loan was fully paid and the debt discharged.  However, BNY Mellon failed to file a satisfaction of mortgage with the Erie County Clerk's Office until nearly one year later on September 22, 2015.

BNY Mellon's failure to record the discharge within thirty days of payment violated New York's mortgage-satisfaction-recording statutes, which require that the mortgage lender present a certificate of discharge to the county

clerk for filing within thirty days of the full repayment of the debt.  See R.P.L.

§ 275(1) (requiring timely presentation of certificate and imposing monetary

penalties for noncompliance); R.P.A.P.L. § 1921(1) (same).

## II.     Procedural history.

On December 15, 2015, approximately three months after BNY Mellon had

recorded the satisfaction, the Maddoxes brought a class action suit against BNY

Mellon for violation of New York's mortgage-satisfaction-recording statutes.

In late 2016, after the Supreme Court issued its decision Spokeo, Inc. v.

Robins, 578 U.S. 330 (2016), BNY Mellon moved to dismiss on the pleadings for

lack of standing.  It argued—among other things—that the Maddoxes lack

Article III standing because they "suffered no actual damages in relation to the

alleged failure to record the satisfaction" and therefore "failed to plead a concrete

harm" under Spokeo.  Maddox v. Bank of N.Y. Mellon Tr. Co., No. 15-cv-01053,

2017 WL 449962, at *2 (W.D.N.Y. Jan. 30, 2017) (Report and Recommendation

("R&R")) (quoting Bank's Memorandum).  The Bank did not dispute that the discharge was untimely filed.[1]

The Maddoxes countered that the Bank's eleven months of noncompliance impaired access to accurate financial information about them in the interval and created a false impression adverse to their credit status.  The Maddoxes argued that the right to be free of these harms was recognized by the state legislature, that the harms bear a strong relationship to harms traditionally actionable at common law, and that the violations caused substantive harms and otherwise created concrete injuries that endow them with standing to seek remedies in federal court.  The Maddoxes further argued that the Bank's period of noncompliance subjected them to a sufficiently real risk of other concrete and particularized harms—failure to obtain financing for other properties and damage to personal credit, for example—and that those risks also gave rise to an injury in fact supporting their Article III standing to sue.  Finally, in conjunction

---

[1] It did argue, however, that it was associated with the Maddoxes' mortgage only as a trustee and therefore had no liability.  The district court rejected that argument, and the issue is not part of the question certified for interlocutory appeal.  See Maddox v. Bank of N.Y. Mellon Tr. Co., No. 15-cv-01053, 2018 WL 3544943, at *5 (W.D.N.Y. July 24, 2018).

with their opposition to the Bank's motion, the Maddoxes submitted an affidavit made by Tometta Maddox Holley attesting to her loss of time, her legal expenses, and her emotional trauma occasioned by the belated filing, which she learned about some time before the satisfaction was finally filed.  Her attestations were not alleged in the complaint.

A magistrate judge issued a Report and Recommendation suggesting that the district court deny the motion to dismiss.  R&R, 2017 WL 449962, at *4.  The district court accepted the recommendation and denied BNY Mellon's motion for judgment on the pleadings.  Maddox v. Bank of N.Y. Mellon Tr. Co., No. 15-cv-01053, 2018 WL 3544943, at *2 (W.D.N.Y. July 24, 2018).  It held that the Bank's violation was a "procedural violation" that satisfied the injury-in-fact requirement for Article III standing because the Bank's violation of the statutes created a "material risk of harm" to them.  Id.  (internal quotation marks omitted).  The district court reasoned that failure to timely record a mortgage satisfaction could cloud title to real property, inhibit sale of the property, and affect a mortgagor's credit.

At the same time, the district court took note of the Eleventh Circuit's contrary decision in Nicklaw v. Citimortgage, Inc., 839 F.3d 998 (11th Cir. 2016),

8

reh'g en banc denied, 855 F.3d 1265 (2017), and a footnote in our decision in

Strubel v. Comenity Bank, 842 F.3d 181, 194 n.15 (2d Cir. 2016), which cites

Nicklaw with apparent approval.  It accordingly identified the question as a close

one and on that basis certified the question for interlocutory appeal.  We

accepted the certification and addressed that question, which has indeed proved

close.

As a threshold issue, we decided that a state legislature, like Congress, has

the power to create legal interests whose violation can satisfy Article III standing.

See Maddox, 997 F.3d at 443-44 (2d Cir. 2021).  We then affirmed the district

court's holding on alternative grounds.  First, we held that the statutes are

"substantive" provisions and that therefore "the Maddoxes need allege no harm

greater than that their discharge was untimely recorded . . . to establish a

concrete, intangible injury of the sort that gives them Article III standing."  Id.  at

447.  Second, we held that even if the statutes were "procedural" in nature, the

Maddoxes still would have established an injury in fact, since the Bank's

violation of the statutes exposed them to a "material risk of [concrete] harm,"

including the risk of not being able to borrow during the period of delay.  Id. at

447-48 (alteration in original) (quoting Spokeo, 578 U.S. at 342).

9

After our initial disposition, BNY Mellon filed a petition for panel rehearing or rehearing en banc (the "Petition"), and the United States Supreme Court decided TransUnion LLC v. Ramirez, --- U.S. ---, 141 S. Ct. 2190 (2021), which expanded upon the standing principles raised by this case.  The parties submitted supplemental letter briefs discussing the impact, if any, of TransUnion on our previous decision.  Because TransUnion bears directly on our analysis, we hereby grant the Petition, withdraw our opinion of May 10, 2021, and issue this amended opinion in its place.  Additional oral argument is unnecessary.

## DISCUSSION

We review a district court's decision regarding judgment on the pleadings de novo.  See Lanning v. City of Glens Falls, 908 F.3d 19, 24 (2d Cir. 2018).

Article III standing requires plaintiffs to show (1) an "injury in fact," (2) a "causal connection" between that injury and the conduct at issue, and (3) a likelihood "that the injury will be redressed by a favorable decision."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted).  The central question on appeal is whether the Maddoxes have met the injury-in-fact requirement.

10

"To demonstrate injury in fact, a plaintiff must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." Strubel, 842 F.3d at 188 (internal quotation marks omitted).  BNY Mellon argues that, although the New York State Legislature may have implicitly recognized that delayed recording can create harms such as a cloud on title and an adverse affect on a mortgagor's credit, the Maddoxes have not alleged, and cannot allege, that they suffered these harms.  Therefore, BNY Mellon asks us to conclude that the Maddoxes have failed to show that the injury alleged was either "concrete" or "particularized" enough to amount to an injury in fact for purposes of Article III standing.  The Maddoxes argue to the contrary, that where the Legislature has recognized a legal interest or interests and a plaintiff has suffered a harm or risk of real harm to those interests, Article III is satisfied.  According to the Maddoxes, the harms that the Legislature aimed to preclude need not have come to fruition for a plaintiff to have suffered a material risk of real harm sufficient to seek the statutory remedy afforded by the Legislature.  We discuss these arguments below.

**I.    Plaintiffs must suffer a concrete harm to establish standing.**

11

"No concrete harm; no standing." TransUnion, 141 S. Ct. at 2200.  This equation, which opens the Supreme Court's TransUnion decision, leaves little room for interpretation and may be sufficient to resolve the issue before us.  Still, the facts in TransUnion bear a strong enough resemblance to those in this case that the Supreme Court's treatment of them proves highly instructive.

A class of 8,185 individuals sued TransUnion, a credit reporting agency, alleging two violations of the Fair Credit Reporting Act ("FCRA").  Id.  First, the plaintiffs alleged that TransUnion's failure to use reasonable procedures led to an inaccuracy in their credit files—namely, that the class member was a "potential match" to an individual on a Treasury Department list of national security threats (the "OFAC list").  Id. 2202.  Second, the plaintiffs claimed that TransUnion failed to adhere to FCRA formatting requirements in the mailings used to inform members about the potential match.  Id.  The class succeeded at trial, but standing became the primary issue on appeal.  Id.

Before addressing the specific allegations, the Supreme Court considered the characteristics that make a harm "concrete" for the purposes of Article III.  Id. at 2204.  The Court explained that whether a harm qualifies as "concrete" hinges

12

on "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." Id. (quoting Spokeo, 578 U.S. at 341). The Court recognized that physical and monetary harms, along with other traditional tangible harms, readily qualify as concrete, and that certain intangible harms, such as reputational harm, qualify as well. Id. The Court also allowed that Congress's views may be "instructive" in determining whether a harm is sufficiently concrete, id. (quoting Spokeo, 578 U.S. at 341), although "an injury in law is not an injury in fact," id. at 2205.

With that, the Supreme Court turned to the plaintiffs' claim that TransUnion's failure to use reasonable procedures led to inaccuracy in their credit files. The Court divided the class into two groups: those members whose credit reports were disseminated to third-party businesses; and those whose credit reports never left TransUnion's internal files. Id. at 2200. The Court ruled that the first group "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation," and, therefore, "suffered a concrete harm that qualifies as an injury in fact." Id. at 2209. The second group, however, suffered no concrete harm because "[p]ublication is 'essential to liability' in a suit for defamation," and their credit files were never published. Id. (quoting

13

Restatement of Torts § 577 cmt. a, p. 192 (1938)).  As the Court explained, "there is no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury."  Id. (internal quotation marks omitted).

The Court further concluded that these class members could not premise standing on a *risk of future harm*—that is, the risk that TransUnion would eventually disseminate the misleading information to third-party businesses. While Spokeo stated that "the risk of real harm" can sometimes "satisfy the requirement of concreteness," id. at 2210 (quoting Spokeo, 578 U.S. at 341-42), that observation (the Court explained) applied only to "suit[s] for *injunctive relief*," id.  In suits for damages, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm."  Id. at 2210-11.  Because these class members presented no evidence "that they suffered some other injury (such as an emotional injury) from the mere risk that their credit reports would be provided to third-party businesses," they were unable to establish standing.  Id. at 2211.

14

Regarding the claim that TransUnion failed to adhere to FCRA formatting requirements, the Supreme Court held that the class members (other than the named plaintiff) had failed to demonstrate that they suffered any concrete harm—or "any harm *at all*"—from such violations, as they presented no evidence that they "so much as *opened*" the relevant mailings.  Id.  at 2213.  Plaintiffs' distinct argument that TransUnion's formatting violations created a risk of future harm—i.e., the risk that consumers would not learn of, and remedy, the OFAC report in their credit files—failed because "the risk of future harm on its own does not support Article III standing for the plaintiffs' damages claim."  Id.

In sum, TransUnion established that in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm: "No concrete harm; no standing."  Id. at 2214.

## II.     The Maddoxes have not suffered a "concrete" harm.

The only allegations that matter are few: the Maddoxes paid off their mortgage when they sold their house; the bank filed the mortgage satisfaction nearly one year afterward.  By statute, New York creates a private right to collect an escalating cash penalty if the satisfaction is filed more than thirty days after the mortgage is paid off, up to $1,500 for delay exceeding ninety days.

15

We need not decide whether state legislatures have the same power Congress enjoys to recognize or create legally protectible interests whose invasion gives rise to Article III standing; TransUnion determined that Congress itself enjoys no such power.  141 S. Ct. at 2205 ("Congress may enact legal prohibitions and obligations. . . .  But under Article III, an injury in law is not an injury in fact.").  Nor need we decide whether the statutes are "substantive" or "procedural"; TransUnion eliminated the significance of such classifications, which had been a preoccupation.[2]  On this appeal, the determinative standing issue is whether the Maddoxes suffered a concrete harm due to the Bank's violation.  It is clear that they have not.

---

[2] Our original opinion observed that a statutory right is considered "substantive" if it protects against a harm that has a close relationship to a harm traditionally regarded as providing a basis for a lawsuit in American courts.  The violation of a substantive right, the opinion explained, constitutes a concrete injury in fact sufficient to establish Article III standing without any additional showing.  TransUnion clarified, however, that the type of harm that a statute protects against is of little (or no) import; what matters is "whether the alleged injury *to the plaintiff* has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." 141 S. Ct. at 2204 (emphasis added) (quoting Spokeo, 578 U.S. at 341).  In other words, plaintiffs must show that the statutory violation caused them a concrete harm, regardless of whether the statutory rights violated were substantive or procedural.

*First*: for the ordinary borrower, delayed recording of a discharge of mortgage may create and sustain an actionable cloud on title to the property securing the discharged mortgage debt.  Long-delayed filings can result in the borrower having to pay a duplicative filing fee for the discharge: once at closing and once when the discharge is actually filed.  The Maddoxes did not allege such harms, however, or allege that they were at risk for such harms.  This is unsurprising because conveyance of their property was completed several weeks before the mortgage satisfaction occurred.  In short, the Maddoxes had no title on which a cloud could settle.[3]

*Second*: a mortgage recorded with the county clerk may convey to those viewing the record that the borrower owes a debt secured by a property.  Correspondingly, a lender's delay in recording a mortgage satisfaction risks creating the false appearance that the borrower has not paid the underlying debt and is thus more indebted and less creditworthy.  This type of reputational

---

[3] True, it may be said that during the period of BNY Mellon's delayed recordation the two nonparty homebuyers ran a risk that if they had flipped the Property the title insurer would flag a vestigial lien.  But the Maddoxes, who had already sold the Property, did not suffer a detriment and never ran the risk of one.

17

harm—i.e., one that flows from the publication of false information—is well

established as actionable at common law.  See Weldy v. Piedmont Airlines, Inc.,

985 F.2d 57, 61-62 (2d Cir. 1993) (discussing elements to establish prima facie

claim of slander); see also Spokeo, 578 U.S. at 341-42 (noting libel and slander per

se as being actionable).

However, the Maddoxes do not allege that they suffered any reputational

harm due to the Bank's violation.  The misleading record may have been public

and available to all; but, so far as is known, it was read by no one.  The public

nature of the record is not analogous to the dissemination of the credit reports in

TransUnion.  There could be no doubt that the third-party businesses viewed

those credit reports, which they had specifically requested and paid for.

This distinction from TransUnion is critical, as it is self-evident that

"unless the defamatory matter is communicated to a third person there has been

no loss of reputation."  Restatement of Torts § 577 cmt. b; see also Albert v.

Loksen, 239 F.3d 256, 269 (2d Cir. 2001) ("A defamatory writing is not published

if it is read by no one but the one defamed.'" (quoting Ostrowe v. Lee, 256 N.Y.

36, 38 (1931) (Cardozo, C.J.))).  True, the Maddoxes may have suffered a

nebulous risk of future harm during the period of delayed recordation—i.e., a

risk that someone (a creditor, in all likelihood) might access the record and act upon it—but that risk, which was not alleged to have materialized, cannot not form the basis of Article III standing.

*Third*: the Maddoxes contend that the Bank's delay adversely affected their credit during that time, making it difficult to obtain financing had they needed it in an emergency or for a new home. But it is not alleged that this purported risk materialized; so it is similarly incapable of giving rise to Article III standing.

*Fourth*: Tometta Maddox Holley attested (in her affidavit opposing BNY Mellon's motion for judgment on the pleadings) that the Bank's failure to timely record the satisfaction after she sold the Property caused her "great stress, mental anguish, anxiety, and distress, which compelled [her] to expend substantial time attempting to determine the status of the recording of the satisfaction of mortgage document, and seeking out legal counsel to assist [her] in having the satisfaction of mortgage recorded." App'x at 88 ¶ 8. These purported harms are of the sort that TransUnion contemplated might form the basis for Article III standing. See TransUnion, 141 S. Ct. at 2211 n.7 ("[A] plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm."); see also Denney

19

v. Deutsche Bank AG, 443 F.3d 253, 265 (2d Cir. 2006) ("The risk of future harm may also entail economic costs . . . but aesthetic, emotional or psychological harms also suffice for standing purposes.").

However, the Maddoxes must "plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." Harry v. Total Gas & Power N. Am., Inc., 889 F.3d 104, 110 (2d Cir. 2018). Although "[i]t is well established in principle that the pleading standard for constitutional standing is lower than the standard for a substantive cause of action," id., the attestations in Tometta Maddox Holley's affidavit were not the subject of allegations in the complaint and, in any event, are implausible.

Holley demands opportunity costs because she "expend[ed] substantial time attempting to determine the status of the recording of the satisfaction of mortgage document."  App'x at 88 ¶ 8.  But if she had, she would have found out that the satisfaction was recorded three months *before* the filing of a complaint that nevertheless alleges that the satisfaction was unrecorded at the time this litigation began.  As to her emotional distress, she offers no reason why the delayed recordation would cause "great stress, mental anguish, anxiety, and distress."  Id.  A perfunctory allegation of emotional distress, especially one

wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing.  Even if it were sufficient, "it is extremely unlikely that such an allegation would be typical of the class."  R&R, 2017 WL 449962, at *3 n.5.

In any event, the Maddoxes need not show a cloud, reputational harm, or any other injury.  The Maddoxes have an easy way to collect their reward for reporting the Bank's delay in recording the mortgage satisfaction: they may recover the statutory penalty in state court.[4]  This is a small claim, in a fixed amount, amenable to a recovery without dispute—and probably without counsel or fees.  It is hard to imagine that a bank would press the issue to litigation.

Of course, state court remains an option for all absent class members as well.  To the extent that such members (or their lawyers) prefer to form a class and bring their claims in federal court, they must come prepared to prove that they suffered concrete harm due to the Bank's violation of the relevant statutes.

---

[4] "[S]tate courts are not bound to adhere to federal standing requirements . . . ." ASARCO Inc. v. Kadish, 490 U.S. 605, 617 (1989).

## CONCLUSION

For the foregoing reasons, we vacate the district court's order denying BNY Mellon's motion for judgment on the pleadings and remand with instructions that the case be dismissed.