UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID WEINER, individually, and on behalf of other members of the public similarly situated,

Plaintiff,

v.

OCWEN FINANCIAL CORPORATION, a Florida corporation and OCWEN LOAN SERVICING, LLC, a Delaware limited liability company,

Defendants.

No. 2:14-cv-02597-DJC-DB

ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DIRECTION OF NOTICE UNDER FED. R. CIV. P. 23(E)

Plaintiff David Weiner, on behalf of himself and a national and California class of borrowers who had their home mortgage loans serviced by Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC ("Ocwen"), moves for preliminary approval of the Settlement and approval of the proposed plan to notify the classes of national and California borrowers.  Ocwen does not oppose the Motion or the Settlement Agreement, which is the byproduct of a second round of mediation between the parties.  For the reasons set forth below, the Court grants Plaintiff's

Motion for Preliminary Approval of Class Settlement and Direction of Notice Under

Federal Rule of Civil Procedure 23(e) (ECF No. 244).

**BACKGROUND**

**I.    Factual Background**

The Court takes the following facts from Plaintiff's unopposed Motion.  (*See*

Mot. Prelim. Approval Class Settlement and Direction of Not. Under Fed. R. Civ. P.

23(e) (ECF No. 244) ("Motion" or "Mot.").)  Plaintiff's suit generally revolves around

allegations that Ocwen misled borrowers into believing that certain fees they paid

were for "reimbursing Ocwen for the amounts it paid to vendors for property valuation

products known as Broker Price Opinions ('BPOs') and Hybrid Valuations ('Hybrids')"

but "included a hidden vendor 'reconciliation' service, which Plaintiff alleges was

neither disclosed nor a necessary or appropriate component of the BPOs and Hybrid

Valuations." (Mot. at 1.)  Plaintiff alleged that the fees charged to – and in many cases

paid by – borrowers for the property valuations were neither a fair market price, nor

consistent with industry standards.  (*See id.* at 3.)  Plaintiff also alleged that Ocwen

rebranded its in-house loan servicer, Ocwen Solutions, into a "supposed third-party

loan servicer named Altisource," through which Ocwen "concealed from borrowers

that their property valuation charges were secretly bundled with additional fees for

unnecessary and undisclosed 'reconciliations' of their property valuation." (*Id.*)

Plaintiff alleged that these fees "were neither authorized by the Uniform Deed of Trust,

nor offered by any other vendor, and only served to line the pockets of Ocwen's

executives, who also owned shares in Altisource." (*Id.*)  As a result, borrowers were

charged tens of millions of dollars for hidden junk fees.  (*Id.* at 1.)

**II.    Procedural Background**

Plaintiff filed the Complaint on November 5, 2014.  (*See* Compl. (ECF No. 1).)

Plaintiff brought seven claims for violations of: (1) California's Unfair Competition Law,

California Business and Professions Code section 17200, *et seq.*; (2) the federal

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sections 1962(c) and

(d) ("RICO"); (3) the Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788, *et seq.*; (4) unjust enrichment under California law; (5) fraud; and (6) breach of contract.  Plaintiff prevailed over an early Motion to Dismiss from Ocwen. (*See* ECF Nos. 6, 9, 10–16.)  Plaintiff then overcame an attempt to stay litigation in this case pending the outcome of another case.  (*See* ECF Nos. 20, 24–25, 39–30, 31, 33.) Discovery ensured, during which time, Plaintiff on several occasions moved to compel production or testimony.  (*See* ECF Nos. 40, 43, 61, 65, 73, 106, 130, 146, 207.) Plaintiff was also able to defeat a motion for interlocutory review of the Court's prior Order denying Ocwen's Motion to Dismiss.  (*See* ECF Nos. 48, 52, 54, 100.)

Plaintiff initially moved to certify the proposed litigation classes on January 30, 2017, which the Court granted on September 29, 2017.  (*See* ECF No. 93, 102.) Ocwen then petitioned for permission to appeal the Court's Class Certification Order on October 13, 2017.  (*See* ECF No. 104.)  Ocwen's petition was summarily denied. (*See* Mot. at 5.)  On June 28, 2019, Ocwen moved for partial summary judgment, seeking to dismiss Plaintiff's RICO claims, his claim for violations of California's Unfair Competition Law, and his claim for unjust enrichment, and to limit Plaintiff's damages to any out-of-pocket losses a class member suffered, that is, what a member actually paid as a result of the deceptive charges.  (*See* ECF No. 164.)  The Court denied Ocwen's requests to dismiss certain claims but granted Ocwen's request to limit the measure of damages.  (*See* ECF No. 181.)

Following the summary judgment motion, the parties began preparing for trial, which was set to begin on March 7, 2022.  (*See* ECF Nos. 183–85, 187, 192.)  On September 20, 2021, however, Ocwen moved to decertify the class in light of the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), which the Court initially granted.  (*See* ECF Nos. 194, 219; Mot. at 5.)  Plaintiff immediately sought reconsideration of the Court's Class Decertification Order, which the Court eventually granted.  (*See* ECF Nos. 220, 227.)  Afterward, the Court rescheduled the jury trial to begin on November 27, 2023.  (*See* ECF No. 232.)

1    Plaintiff filed a notice of settlement on October 11, 2023 (*see* ECF No. 238), and

2  filed the instant Motion on December 18, 2023.  (*See* ECF No. 244.)  Rather than hear

3  oral arguments on the Motion, the Court asked for supplemental briefing, which the

4  parties filed on March 8, 2024.  (*See* Defs.' Br. re Class Settlement (ECF No. 247)

5  ("Ocwen's Supplemental Briefing" or "Ocwen's Suppl. Br."); Pl.'s Suppl. Br. in Supp. of

6  Mot. for Preliminary Approval of Class Settlement and Direction of Notice under Fed.

7  R. Civ. P. 23(e) (ECF No. 248) ("Plaintiff's Supplemental Briefing" or "Pl.'s Suppl. Br.").)

8  The matter is now fully briefed.

9  **III.    The Proposed Settlement**

10    The general terms of the Settlement Agreement are clear, as is the parties'

11  intent to settle this matter.  For instance, it appears Settlement Counsel will seek fees

12  of $8 million plus costs estimated to be about $950,000.  (*See* Settlement Agreement

13  Ex. B (ECF No. 244-1 at 48–61), at 2 ("Class Notice"); Pl.'s Suppl. Br. at 3–4.)  The

14  Settlement Cass includes a National Settlement Class and a California Settlement Sub-

15  Class.  (*See* Mot. at 7.)

16    The National Settlement Class includes:

17    All residents of the United States of America who have or
18    had a loan serviced by Ocwen Financial Corporation or
   Ocwen Loan Servicing LLC (together, "Ocwen") and who
19    paid for one or more Broker Price Opinions ("BPOs") or
   Hybrid Valuations ("Hybrids") charged by Ocwen through
20    Altisource, from November 5, 2010 through September 29,
   2017, the date of the class certification order in this action[.]

21  (*Id.*)  The National Settlement Class will receive either $60 or $70 in reimbursement for

22  a BPO fee or Hybrid Valuation fee paid.  (*See id.*)

23    The California Settlement Sub-Class includes:

24    All residents of the State of California who have a loan
   serviced by Ocwen and to whom charges for one or more
25    BPOs or Hybrids were assessed to their mortgage account
   by Ocwen through Altisource, from November 5, 2010
26    through September 29, 2017.

27  (*Id.*)  California Settlement Sub-Class members will have a credit applied or the charge

28  reversed, which is worth $60 for a BPO and $70 for a Hybrid Valuation.  (*See id.*)

1    The parties will appoint JND Legal Administration as the Settlement
2    Administrator, and Ocwen will pay for the Settlement Administrator to implement the
3    notice program and administrate the claims process up to $600,000. (*See* Mot. at 8.)
4    The Settlement Administrator estimates that the costs will be $586,000 based on the
5    final tally of the claims administrated. (*See id.*) The Settlement Administrator will
6    identify and locate Settlement Class Members to mail them notices as soon as
7    practicable once the parties provide the Settlement Administrator all available
8    records, data and information necessary to identify and locate Settlement Class
9    Members. (*See* Decl. of Roland Tellis in Supp. of Pl.'s Mot. Ex. 1 (ECF No. 244-1 at 7–
10    34), at 7 ("Settlement Agreement").) To obtain relief, a Settlement Class Member must
11    submit a claim, which only requires the Class Member to claim that they are a member
12    of the Sub-Class, which the Settlement Administrator will confirm. (*See id.* at 8.)
13    As for the Gross Settlement Amount the parties have informed the Court that
14    "the maximum potential gross settlement award obtainable by Class Members is
15    $53,826,220." (Ocwen's Suppl. Br. at 1; *see* Pl.'s Suppl. Br. at 1.) Ocwen, however,
16    informed the Court that Ocwen has not agreed to a total settlement amount, but,
17    instead, has agreed to an "uncapped claims-made settlement, wherein Ocwen will pay
18    for the total amount of submitted and verified claims." (Ocwen's Suppl. Br. at 2.) The
19    Court also understands that there are 322,958 class members in the National
20    Settlement Class and 7,419 class members in the California Settlement Sub-Class, for
21    a total of 330,377 borrowers. (*See* Ocwen's Suppl. Br. at 1; Pl.'s Suppl. Br. at 2.)
22    Finally, Settlement Counsel has clarified with the Court that "Plaintiff's counsel will file
23    their motions for attorneys' fees, expenses, and service awards at least 30 days before
24    the proposed objection/opt-out deadline." (Pl.'s Suppl. Br. at 3.)

**DISCUSSION**

25
26    **IV.    The Proposed Settlement**
27    Plaintiff seeks to certify the Settlement Class pending final approval. (*See* Mot.
28    at 17.) Under Federal Rule of Civil Procedure 23, in order to approve a preliminary

settlement agreement, a court must determine if it "will likely be able to" both (1) "certify the class for purposes of the judgment on proposal" under Rule 23(a) and 23(b), and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). For classes likely to be certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," imposing specific requirements on the contents of the notice. Fed. R. Civ. P. 23(c)(2)(B). After determining certification is appropriate, the Court must then decide whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 952. At the preliminary approval stage, the court considers the likelihood that it will ultimately approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). The determination as to whether to grant final approval is given after class members have been notified and given the opportunity to provide feedback. Fed. R. Civ. P. 23(e)(2).

### A. Plaintiff Has Twice Demonstrated That Rule 23(b)(3) Classes Exist

#### 1. Legal Standard

Whether a class exists depends on whether the class can be certified, which is a two-step process. *See In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prod. Liab. Litig.*, No. 2672-CRB-JSC, 2016 WL 4010049, at *10 (N.D. Cal. July 26, 2016) ("*In re Volkswagen*") (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)); *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (*en banc*) ("*In re Hyundai*") (citing Fed. R. Civ. P. 23(a)–(b)). First, representative plaintiffs must establish the four requirements of numerosity, commonality, typicality, and adequacy under Federal Rule of Civil Procedure 23(a). *See In re Volkswagen*, 2016 WL 4010049, at *10 (citing Fed. R. Civ. P. 23(a)); *In re Hyundai*, 926 F.3d at 556 (same). In addition to meeting the numerosity, commonality, typicality, and adequacy prerequisites, the class action must fall within one of the three types specified in Rule 23(b). *In re Hyundai*, 926 F.3d at 556. A class cannot be certified until the district court is

1  "satisfied, after a rigorous analysis, that the prerequisites" of both Rule 23(a) and 23(b)

2  have been satisfied.  *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods*

3  *LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (*en banc*) (fist quoting *Gen. Tel. Co. of Sw. v.*

4  *Falcon*, 457 U.S. 147, 161 (1982); and then citing *Comcast Corp. v. Behrend*, 569 U.S.

5  27, 35 (2013)), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop.,*

6  *Inc., On Behalf of Itself & All Others Similarly Situated*, 143 S. Ct. 424 (2022) (mem.).

7      The criteria for class certification are applied differently in litigation classes and

8  settlement classes.  *In re Hyundai*, 926 F.3d at 556.  District courts should not consider

9  whether the action would be manageable at trial under Rule 23(b)(3)(D) because the

10  point of the proposed settlement is to avoid trial and such difficulties.  *See id.* at 557

11  (quoting *Amchem Prod., Inc.*, 521 U.S. at 620).  But other specifications of the Rule –

12  those designed to protect absentees by blocking unwarranted or overbroad class

13  definitions – demand undiluted, even heightened, attention in the settlement context.

14  *Amchem Prod., Inc.*, 521 U.S. at 620.  Such attention is of vital importance, for a court

15  asked to certify a settlement class will lack the opportunity, present when a case is

16  litigated, to adjust the class, informed by the proceedings as they unfold.  *Id.* (citing

17  Fed. R. Civ. P. 23(c)–(d)).

18          **2.    Analysis**

19      Plaintiff has twice litigated the issue of class certification and ultimately

20  prevailed.  (*See* Mot. at 17–21 (quoting ECF No. 102 (providing the Court's Order

21  granting class certification)); *also* ECF Nos. 194 (providing Ocwen's motion for

22  decertification in light of *TransUnion*, arguing that Plaintiff could not satisfy the

23  predominance requirements of Rule 23(b)(3)); 227 (providing the Court's Order

24  granting Plaintiff's Motion for Reconsideration of ECF No. 219, which granted Ocwen's

25  decertification motion, holding that the Ninth Circuit's decision in *Olean*, 31 F.4th at

26  682, foreclosed Ocwen's argument).)  Ocwen provides no further opposition.  The

27  Court's prior rulings are sufficient for approval should no objections be raised.  *See*

28  *Carlin v. DairyAm., Inc.*, 380 F. Supp. 3d 998, 1008 (E.D. Cal. 2019) (collecting cases).

1    Previously, the Court certified three total sub-classes: (1) a national class of

2  borrowers who paid for one or more BPOs or Hybrid Valuations and who could obtain

3  relief under RICO; (2) a California sub-class of borrowers who paid for one or more

4  BPOs or Hybrid Valuations and could obtain relief under California's Unfair

5  Competition Law and for unjust enrichment; and (3) a California sub-class of

6  borrowers who were charged for one or more BPOs or Hybrid Valuations and could

7  obtain relief under California's Unfair Competition Law.  (*See* Mot. at 4–5 (quoting ECF

8  No. 102 at 12); ECF No. 93 at 10 and n.9.)  Now, Plaintiff seeks to consolidate the

9  national and California sub-classes who paid for one or more BPOs or Hybrid

10  Valuations into one national sub-class.  (*See* Mot. at 7 and n.2.)  Given the similarities

11  between the three sub-classes the Court previously approved and the two sub-classes

12  Plaintiff proposes now, the Court concludes that Plaintiff has shown that the Court will

13  likely be able to certify the class for purposes of judgment.  Fed. R. Civ. P.

14  23(e)(1)(B)(ii).

15    **a.    The Proposed Classes Satisfy Rule 23(a)**

16    To take advantage of Rule 23's procedure for aggregating claims, plaintiffs

17  must make two showings.  *Olean*, 31 F.4th at 663.  First, the plaintiff must satisfy the

18  four requirements of Rule 23(a): (1) numerosity, that is, "that joinder of all members is

19  impracticable;" (2) commonality, that is, that "there are questions of law or fact

20  common to the class;" (3) typicality, that is, that "the claims or defenses of the

21  representative parties are typical of the claims or defenses of the class; and

22  (4) adequacy, that is, that "the representative parties will fairly and adequately protect

23  the interests of the class."  Fed. R. Civ. P. 23(a).  As explained below, Plaintiff satisfies

24  all four requirements under Rule 23(a) with respect to the Settlement Class.

25    **i.    The Proposed Classes Are Numerous**

26    In general, for numerosity, classes smaller than fifteen are not permissible.  *See*

27  *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330

28  (1980).  Classes exceeding 40 parties are normally needed, as that is when joinder

1  becomes impracticable, but classes between 20 to 40 members may suffice,

2  depending on the circumstances of the case, *see, e.g.*, *Dilts v. Penske Logistics, LLC*,

3  267 F.R.D. 625, 632 (S.D. Cal. 2010) (first citing *Consol. Rail Corp. v. Town of Hyde*

4  *Park*, 47 F.3d 473, 482 (2d Cir. 1995); and then citing *Ikonen v. Hartz Mountain Corp.*,

5  122 F.R.D. 258, 262 (S.D. Cal. 1998)).

6      Here, the California Settlement Sub-Class contains over 7,000 potential

7  members, and the National Settlement Class contains over 300,000 members.  (*See*

8  Ocwen's Suppl. Br. at 1; Pl.'s Suppl. Br. at 1.)  The two classes exceed 40 individuals

9  and are therefore sufficiently numerous.  *See Dilts*, 267 F.R.D. at 632.

10      **ii.    The Settlement Class Has Common Questions**

11      To establish commonality, the plaintiff need only establish a single significant

12  question of law or fact.  *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589

13  (9th Cir. 2012) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)

14  ("*Dukes*")), *overruled on other grounds by Olean*, 31 F.4th at 682 n.32 (overruling

15  *Mazza* to the extent it held that "no class may be certified that contains members

16  lacking Article III standing, which does not apply when a court is certifying a class

17  seeking injunctive or other equitable relief.").  A common question "must be of such a

18  nature that it is capable of classwide resolution—which means that determination of its

19  truth or falsity will resolve an issue that is central to the validity of each one of the

20  claims in one stroke."  *Olean*, 31 F.4th at 663 (quoting *Dukes*, 564 U.S. at 350).  By

21  contrast, an individual question is one where members of a proposed class will need

22  to present evidence that varies from member to member.  *Id.* (citing *Tyson Foods, Inc.*

23  *v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

24      Here, there are several common questions that exist among the National

25  Settlement Class and the California Settlement Sub-Class, all of which ultimately

26  derive from the Uniform Deed of Trust.  (*See* Compl. ¶¶ 54–58, 72–84, 121.)  For

27  instance, the Court previously found that the "classwide claims alleged here depend

28  on whether or not the BPOs and Hybrid Valuations charged to Plaintiff and members

1   of the purported class were unlawful." (ECF No. 102 at 8.)  This required looking to

2   the language of the Uniform Deed of Trust, and resolution of this issue would

3   establish liability.  Thus, there were common questions on the merits.  The same still

4   holds true for the Settlement Class.  Therefore, Plaintiff has established that there exist

5   common questions among the Settlement Class.  *See Mazza*, 666 F.3d at 589.

6               **iii.    Plaintiff Is Typical Under Rule 23(a)**

7       As both the Supreme Court and Ninth Circuit have recognized:

8           Rule 23(a)'s commonality and typicality requirements
            occasionally merge: "Both serve as guideposts for
9           determining whether under the particular circumstances
            maintenance of a class action is economical and whether
10          the named plaintiff's claim and the class claims are so
            interrelated that the interests of the class members will be
11          fairly and adequately protected in their absence."

12  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Dukes*, 564 U.S. at 349

13  n.5).

14       "Under the rule's permissive standards, representative claims are 'typical' if they

15  are reasonably coextensive with those of absent class members; they need not be

16  substantially identical." *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020

17  (9th Cir. 1998)).  "The test of typicality 'is whether other members have the same or

18  similar injury, whether the action is based on conduct which is not unique to the

19  named plaintiffs, and whether other class members have been injured by the same

20  course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011)

21  (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "Typicality

22  refers to the nature of the claim or defense of the class representative, and not to the

23  specific facts from which it arose or the relief sought." *Ellis*, 657 F.3d at 984 (quoting

24  *Hanon*, 976 F.2d at 508).  Typicality under "Rule 23(a)(3) requires only that [the

25  representative's] claims be 'typical' of the class, not that they be identically positioned

26  to each [ ]other or to every class member[,]" *Parsons*, 754 F.3d at 686, as "[d]iffering

27  factual scenarios resulting in a claim of the same nature as other class members does

28  not defeat typicality." *Ellis*, 657 F.3d at 985 n.9.

1    Here, the Court concludes that Plaintiff is typical of the Settlement Class.

2  Ocwen previously argued that Plaintiff was an atypical member because Plaintiff had

3  some unique defenses that applied to him.  (*See* ECF No. 85 at 5–7, 23–24) (providing

4  Ocwen's Class Certification Opposition where Ocwen summarized Plaintiff's "unique

5  loan history" and argued that it precluded a finding of typicality); ECF No. 197-1 at 6–

6  7, 18–20 (providing Ocwen's Class Decertification Motion where Ocwen noted that

7  Plaintiff's own class-wide evidence for showing damages and injury-in-fact did not

8  establish by Plaintiff's methodology that Plaintiff himself paid any charges or suffered

9  any damages).).  However, Ocwen's argument regarding Plaintiff's alleged unclean

10  hands (*see* ECF No. 97 at 2 (providing Plaintiff's Class Certification Reply)), and

11  convoluted theory of standing distinct from the class-wide evidence (*see* ECF No. 197-

12  1 at 19–20 (providing Ocwen's Class Decertification Motion)), do not detract from the

13  fact that Plaintiff was harmed as a result of Ocwen's allegedly unlawful conduct that

14  stems from the Uniform Deed of Trust.  Thus, Plaintiff has suffered the same or similar

15  injury as the rest of the Settlement Class.  *See Ellis*, 657 F.3d at 984.

16    Moreover, Ocwen's arguments always went more towards damages

17  calculations issues, which do not prevent granting preliminary approval.  "[A] district

18  court is not precluded from certifying a class even if plaintiffs may have to prove

19  individualized damages at trial, a conclusion implicitly based on the determination

20  that such individualized issues do not predominate over common ones." *Olean*, 31

21  F.4th at 669 (citing *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th

22  Cir. 2016)).  Thus, Plaintiff's claim is typical of the Settlement Class, even though his

23  damages calculations may have differed from some portions of the class at trial, which

24  in any event is not relevant for purposes of approving a settlement class.  *See In re*

25  *Hyundai*, 926 F.3d at 557.

26

27

28

11

1
2

              **iv.**     **Plaintiff and Settlement Counsel Are Adequate Representatives**

3       Federal Rule of Civil Procedure 23(a)(4) requires the representatives show that

4 they will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

5 23(a)(4).  For adequacy of representation, "courts must resolve two questions: '(1) do

6 the named plaintiffs and their counsel have any conflicts of interest with other class

7 members and (2) will the named plaintiffs and their counsel prosecute the action

8 vigorously on behalf of the class?'"  *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at

9 1020).  Adequate representation depends on, among other factors, an absence of

10 antagonism between representatives and absentees, and a sharing of interests

11 between representatives and absentees.  *Id.* (citing *Molski v. Gliech*, 318 F.3d 937, 955

12 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d

13 571, 620–23 (9th Cir. 2010)).

14       Here, Plaintiff and Settlement Counsel declare that they will both continue

15 vigorously litigating this case.  (*See* Mot. at 19–20; Decl. of Roland Tellis in Supp. of

16 Pl.'s Mot. (ECF No. 244-1) ¶¶ 11, 15 ("Tellis Decl.").)  Their assertion is supported by

17 the lengthy docket in this case, which has been the subject of a significant amount of

18 motion practice.  Therefore, for purposes of preliminary approval, the Court

19 concludes that Plaintiff and Settlement Class are adequate representatives based on

20 their prior work and declared intent to continue vigorously litigating this case.  *See*

21 Fed. R. Civ. P. 23(a)(iv).

22           **b.**     **The Proposed Classes Satisfy Rule 23(b)(3)**

23       After establishing the four requirements of Rule 23(a), the plaintiff must show

24 that the proposed class falls within the scope of one of Rule 23(b)'s three categories.

25 *See Olean*, 31 F.4th at 663.  The plaintiff has the burden of proving facts necessary for

26 certifying a class under Rule 23 by a preponderance of the evidence, and the plaintiff

27 may use any admissible evidence.  *See Olean*, 31 F.4th at 665 (citing *Tyson Foods,*

28 *Inc.*, 577 U.S. at 454–55).

1    Rule 23(b) permits certification of three types of classes: (1) where case-by-case

2    adjudication would lead to inconsistent results or judgments, *see* Fed. R. Civ. P.

3    23(b)(1); (2) where the class seeks injunctive or declaratory relief, *see* Fed. R. Civ. P.

4    23(b)(2); or (3) where (a) common questions predominate over individual questions

5    and (b) aggregating the claims in a class action is superior to other available methods

6    for fairly and efficiently adjudicating the controversy, *see* Fed. R. Civ. P. 23(b)(3).

7    Where, as here, the plaintiff seeks monetary damages, the plaintiff must satisfy the

8    requirements of Rule 23(b)(3).

9                    **i.      Common Questions Predominate**

10    The predominance requirement under Rule 23(b)(3) is a more demanding test

11   than what is required under Rule 23(a).  *See Amchem Products, Inc.*, 521 U.S. at 623–

12   24.  In considering whether the questions of fact and law predominate, the Court must

13   determine "whether proposed classes are sufficiently cohesive to warrant adjudication

14   by representation."  *Id.* at 623.  Though it is the plaintiff's burden to prove that class

15   issues predominate, "a plaintiff need not rebut every individualized issue that possibly

16   could be raised[ ]" because that "would be akin to demanding proof 'that plaintiffs

17   would win at trial.'"  *Van v. LLR, Inc.*, 61 F.4th 1053, 1066–67 (9th Cir. 2023) (first citing

18   *Olean*, 31 F.4th at 664–65; and then quoting *Olean*, 31 F.4th at 667).

19    Previously Ocwen argued that Plaintiff was atypical because he lacked standing.

20   However, Plaintiff has established his standing, as has the rest of the Settlement Class,

21   because of the temporary loss of use of money from allegedly unlawful charges

22   decreasing the equity available in the home.  *See Maya v. Centex Corp.*, 658 F.3d

23   1060, 1071 (9th Cir. 2011) (citing *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91,

24   101–11 (1979)); *Van*, 61 F.4th at 1064.

25    Ocwen also argued that Plaintiff lacked evidence to establish class-wide injury.

26   (*See, e.g.*, ECF No. 206-1 at 4–7.)  However, Plaintiff was only required to provide

27   evidence that "establishes that a common question is *capable* of class-wide resolution,

28   not whether the evidence in fact establishes that plaintiffs would win at trial."  *Olean*,

1  31 F.4th at 667.  As it is, Plaintiff provided substantial evidence suggesting that

2  Ocwen's conduct was unlawful, pointing to documents indicating that no other

3  businesses engaged in the same practice as Ocwen, and that Ocwen's conduct

4  caused class-wide injury, pointing to a spreadsheet using information provided by

5  Ocwen that showed which Class Members were charged an unlawful fee and paid for

6  it.  (*See* ECF No. 181 at 3–10, 13–14 (providing the Partial Summary Judgment Order);

7  ECF No. 175 at 4–9, 10–18 (providing Plaintiff's Partial Summary Judgment

8  Opposition).)  In light of this evidence, Plaintiff provided sufficient material to show

9  that the questions of whether Ocwen's practices were unlawful and whether Plaintiff

10  and other Class Members were injured could be resolved class-wide at trial.  *See*

11  *Olean*, 31 F.4th at 667.

12      Accordingly, the Court concludes that class issues predominate.

13                  **ii.    A Class Action Is Superior**

14      The superiority requirement is used to decide whether a class action suit is

15  preferable to other methods by reducing costs and promoting efficiency.  *Amchem*

16  *Products, Inc.*, 521 U.S. at 620.  Rule 23(b)(3) class actions are permitted where the

17  only realistic chance for recovery is by aggregating their claims because of how little

18  each claim is worth.  *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las*

19  *Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

20      As evidenced by the Proposed Settlement, the value of each claim is relatively

21  small.  Each class member is entitled to $60 or $70 per marked-up fee that was paid.

22  Thus, the only real shot of recovery was by aggregating those claims.  *See id.* at 1163.

23          **B.    The Proposed Settlement Is Fair, Reasonable, and Adequate**

24                  **1.    Legal Standard**

25      Under Federal Rule of Civil Procedure 23(e)(2), a district court may approve a

26  class action settlement only after finding that the settlement is "fair, reasonable, and

27  adequate."  *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120–21 (9th Cir. 2020).

28  Courts reviewing class action settlements must "ensure[ ] that unnamed class

1   members are protected 'from unjust or unfair settlements affecting their rights,'" while

2   also accounting for "the 'strong judicial policy that favors settlements, particularly

3   where complex class action litigation is concerned.'" *Id.* at 1121 (quoting *In re*

4   *Hyundai*, 926 F.3d at 556, 568) (alteration in *Campbell*).  "To survive appellate review,

5   the district court must show [that] it has explored comprehensively all [Rule 23(e)(2)]

6   factors, and must give a reasoned response to all non-frivolous objections."  *In re*

7   *Apple Inc. Device Performance Litig.*, 50 F.4th 769, 782 (9th Cir. 2022) (quoting

8   *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 606 (9th Cir. 2021)) (first alteration

9   added; second alteration included).

10                    **2.    Analysis**

11          Because this is the preliminary approval stage, some parts of the Rule 23(e)(2)

12   analysis cannot be completed yet.  Moreover, as other courts have recognized, the

13   Court need not consider all of the fairness factors at the preliminary approval stage.

14   *See, e.g.*, *In re Volkswagen*, 2016 WL 4010049, at *13 (citing *Alberto v. GMRI, Inc.*, 252

15   F.R.D. 652, 665 (E.D. Cal. 2008)).  Preliminary approval of the settlement is proper

16   where the proposed settlement appears to be the product of serious, informed, non-

17   collusive negotiations, has no obvious deficiencies, does not improperly grant

18   preferential treatment to class representatives or segments of the class, and falls

19   within the range of possible approval.  *See In re Tableware Antitrust Litig.*, 484 F.

20   Supp. 2d 1078, 1079–80 (N.D. Cal. 2007) (citation omitted).  In light of this lesser

21   showing required, the Court concludes that the Settlement Agreement should be

22   submitted to the Settlement Class members for consideration.  *See In re Toyota Motor*

23   *Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 8:10-ML-

24   2151-JVS-FMOx, 2012 WL 7802852, at *6 (C.D. Cal. Dec. 28, 2012).

25                    **a.    Plaintiff and Counsel Are Adequate Representatives**

26          Because the Court has previously held that Settlement Counsel and Plaintiff

27   adequately represent the class for purposes of Rule 23(a)(4), Plaintiff and Settlement

28   Counsel satisfy the requirements of Rule 23(e)(2)(a), as the determinations are

1   identical.  *See Mejia v. Walgreen Co.*, No. 2:19-cv-00218-WBS-AC, 2020 WL 6887749,

2   at *9 (E.D. Cal. Nov. 24, 2020) (collecting sources).  Moreover, Plaintiff has expressed

3   his continued willingness to represent and protect the interests of the class.  (*See* Mot.

4   at 10 (citing Tellis Decl. ¶ 10.)  Thus, the Court concludes that Plaintiff and Settlement

5   Counsel will continue to vigorously litigate the case.

6                   **b.       The Settlement Arose After Two Mediations**

7          Plaintiff and Ocwen have twice gone to mediation.  (*See* Tellis Decl. ¶¶ 4–5.)

8   The parties first tried mediation following the Court's Order on October 25, 2018,

9   after Ocwen had already sought dismissal and Plaintiff certified the class.  (*See* ECF

10   No. 148.)  On July 24, 2018, the parties convened for arbitration and engaged in

11   good-faith discussions concerning all matters in dispute.  (*See* Tellis Decl. ¶ 4.)  The

12   first round of mediation was unsuccessful, but the parties resumed settlement

13   negotiations on July 26, 2023, after the partial motion for summary judgment was

14   decided and after the motion to decertify the class was denied following

15   reconsideration.  (*See id*. ¶ 5.)  This second round of mediation culminated in the

16   Settlement Agreement.  (*See id*. ¶¶ 5–6.)  Between these two rounds of mediations,

17   the parties exchanged large amounts of discovery, which also ultimately supports

18   approving the Settlement Agreement.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

19   454, 459 (9th Cir. 2000) ("*In re Mego*"), *as amended* (June 19, 2000).  Here, the parties

20   exchanged documents totaling over 1.5 million pages.  (*See* Mot. at 12; Tellis Decl.

21   ¶ 10.)  Considering this case has taken nearly a decade to reach this point, the Court

22   may fairly presume that the parties know the value and merits of the case.  Moreover,

23   the parties agree "[e]ach of the Settling Parties assumes the risk of mistake as to facts

24   or law." (Settlement Agreement at 20.)  In light of these mediations that were

25   separated by years of continued discovery and motion practice, the Court, at this

26   stage, finds that the Settlement Agreement was the product of arm's length

27   negotiations and is fair.  Fed. R. Civ. P. 23(e)(2)(B); *see also Chambers v. Whirlpool*

28   *Corp.*, 980 F.3d 645, 669 (9th Cir. 2020).

1          **c.     The Relief Appears Adequate**

2          Determining the adequacy of the relief requires the Court to consider four

3 factors: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any

4 proposed method of distributing relief to the class, including the method of

5 processing class-member claims; (3) the terms of any proposed award of attorney's

6 fees, including timing of payment; and (4) any agreement required to be identified

7 under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv).

8                          **i.     The Costs and Risks of Trial Are Considerable,
                                     Whereas the Relief Will be Concrete and**
9                                   **Immediate**

10         Plaintiff's argument here is that the Settlement Class Members will receive $60

11 for charges that cost them, on average, $56 for BPOs, or $70 for charges that cost

12 them, on average, $66 for Hybrid Valuations, which is a considerable amount when

13 factoring in the costs and risks of trial, and that "the issue as to whether the Class

14 Members would be entitled to recovery of the full amount of the BPO and Hybrid fees

15 assessed or just the amount of the markups was heavily disputed but unresolved."

16 (Mot. at 14.)  Moreover, this is a complex civil lawsuit involving federal RICO claims,

17 which are notoriously difficult claims to prove, and an appeal would be likely

18 regardless of the outcome at trial, thus favoring approval of the Proposed Settlement.

19 *See Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).

20                         **ii.     The Proposed Method of Relief Will Be Effective**

21         The National Settlement Class will receive a settlement check mailed to them.

22 (See Settlement Agreement at 10.)  The California Settlement Sub-Class will have their

23 accounts credited or have charges reversed.  (See id. at 11.)  Such relief will be

24 immediate.  The California Settlement Sub-Class will be identified by whether a fee is

25 marked as "FB36" during the class period but not marked "paid" in Ocwen's loan

26 database at any point.  (See id.)  Considering that the National Settlement Class would

27 include any members not in the California Settlement Sub-Class, that means that both

28 classes may easily be identified through Ocwen's loan database.

1    Moreover, the Class Notice provides comprehensive information about the

2   Settlement Agreement.  For instance, the Class Notice provides a Table of Contents

3   where the Settlement Class can learn about the following topics: what the Class

4   Notice contains; what the Class Notice is about; who is part of the Settlement Class;

5   submitting a claim; receiving payment; understanding the class action process; the

6   claims and rights released or waived; the consequences of doing nothing; how to opt-

7   out and the consequences for doing so; how the lawyers will be paid; how to object to

8   the settlement and the difference between objecting and opting-out; when and where

9   the Final Fairness Hearing will be; and how to obtain more information.  (*See* Class

10   Notice at 3.)  The Class Notice seems likely to apprise a Settlement Class Member of

11   their rights and what steps to take, thus making it more likely that the Settlement Class

12   Members will receive relief.  The Class Notice, therefore, adds to the effectiveness of

13   the Settlement Agreement and supports finding that the Settlement Agreement is fair,

14   reasonable, and adequate.

15    Finally, the Claim Form is streamlined and easy to understand and complete.

16   The Claim Form, totaling three pages, informs the Settlement Class how to submit a

17   claim online, via email, or via postmarked mail on the first page.  The second page

18   requires the Settlement Class Member to provide basic information, like their address

19   and name.  If a Class Member receives a unique identification in their Class Notice, the

20   member should list that.  Finally, the Class Member must check a box to assert that

21   they are a member of the National Settlement Class or the California Settlement Sub-

22   Class before signing and dating the form and informing Ocwen how the member

23   would like to be paid.  (*See* Settlement Agreement Ex. C (ECF No. 244-1 at 62–65).)

24    Considering the Class Notice, the Claim Form, and the Settlement Agreement,

25   the proposed method of relief will likely be effective.

26    **iii.    Fees Will Ultimately Be Determined by the Court**

27    Following Supplemental Briefing from the parties, the Court has the

28   information needed to evaluate the *Bluetooth* factors.  *See, e.g.*, *In re Bluetooth*

1    *Headset Prod. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) ("*In re Bluetooth*").  For

2    instance, it appears that fees and costs for Plaintiff's counsel are reasonable compared

3    to the Gross Settlement Amount.  Plaintiff's Counsel will seek about $8 million in fees

4    and $950,000 in costs.  (*See* Pl.'s Suppl. Br. at 2; Class Notice at 2.)  The Gross

5    Settlement Amount might exceed $53 million.  (*See* Ocwen's Suppl. Br. at 1; Pl.'s

6    Suppl. Br. at 1.)  Fees of around $8 million out of a potential settlement amount of $53

7    million would equate to of a rate of about 15%, meaning that Settlement Counsel

8    would not be able to recover more than 25%, which is the benchmark for attorney's

9    fees.  *See In re Bluetooth*, 654 F.3d at 942.

10        Thus, the Court concludes that the terms of the Settlement Agreement do not

11    preclude this Court from preliminarily approving it.  Crucially, Settlement Counsel has

12    denied itself the right to object to the Court awarding less for costs and fees, and

13    Ocwen now takes the position that it will not object to whatever fees are awarded to

14    Plaintiff's Counsel.  (*See* Settlement Agreement at 15; Pl.'s Suppl. Br. at 3–4; Ocwen's

15    Suppl. Br. at 2.)  Therefore, because the Court will ultimately decide what to award

16    Settlement Counsel, nothing prevents the Court granting preliminary approval.

17                    **iv.    The Court Will Also Determine Plaintiff's Award**

18        The Settlement Agreement includes a potential "incentive award" for Plaintiff of

19    up to $12,500.  (*See* Mot. at 16.)  The Court has some concerns with this "incentive

20    award."  *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1056–58 (9th Cir. 2019).

21        Incentive awards of $5,000 are generally reasonable.  *See Alberto*, 252 F.R.D. at

22    669.  Yet here, Settlement Counsel seeks more than double the benchmark.

23    Settlement Counsel claim that they will seek an incentive award for Plaintiff because

24    he participated in litigation by collecting and preserving documents and information

25    related to his claims, providing such information to counsel upon request, working

26    with counsel to prepare responses to interrogatories, and sitting for a deposition.

27    (*See* Tellis Decl. ¶ 11.)  However, incentive awards are normally provided "to

28    compensate class representatives for work done on behalf of the class, to make up for

19

1    financial or reputational risk undertaken in bringing the action, and, sometimes, to

2    recognize their willingness to act as a private attorney general." *Roes, 1–2*, 944 F.3d at

3    1057 (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009)).  To

4    the Court's knowledge, Plaintiff has incurred no financial or reputational risk in

5    bringing this action and has only sat for one deposition.  Thus, an incentive award is

6    concerning because "special rewards for counsel's individual clients are not

7    permissible when the case is pursued as a class action." *Id.* (quoting *Staton v. Boeing*

8    *Co.*, 327 F.3d 938, 976 (9th Cir. 2003)).

9        Moreover, the cases provided by Plaintiff in support are inapt.  (*See* Mot. at 16.)

10   In the first case, the court declined to approve the incentive award of $5,000 and

11   decided to wait until the Final Fairness Hearing.  *See Cisneros v. Airport Terminal*

12   *Servs., Inc.*, No. 2:19-cv-02798-VAP-SPx, 2021 WL 3812163, at *9 (C.D. Cal. Mar. 26,

13   2021).  In the second case, the court decided to approve the incentive award of

14   $15,000, but only after "Class Counsel dedicated no less than five pages of the Final

15   Approval Motion to this issue . . . ." *La Fleur v. Med. Mgmt. Int'l, Inc.*, No. EDCV 13-

16   00398-VAP, 2014 WL 2967475, at *8 (C.D. Cal. June 25, 2014).  The Motion and the

17   attached declaration each dedicate a paragraph to the issue.  (*See* Mot. at 16; Tellis

18   Decl. ¶11.)  That is not enough to justify the incentive award.

19       Finally, the Court has concerns that the incentive award to Plaintiff amounts to

20   "what is essentially a side settlement between [Plaintiff] and [Ocwen] covering

21   additional claims not covered in the class settlement." *Roes, 1–2*, 944 F.3d at 1057.

22   When Plaintiff moved for class certification, Plaintiff sought to continue bringing some

23   of his claims individually.  (*See* ECF No. 93 at 10 n.9 ("Although he is not seeking class

24   certification for all of the claims asserted in his Complaint, Plaintiff continues to seek

25   relief with respect to the other allegations in his Complaint on an individual basis.").)

26   Thus, the $12,500 incentive award could be viewed as a side settlement for these

27   claims.  This suggestion from the Settlement Agreement is buttressed by the fact that

28

1   Plaintiff is otherwise entitled to relief as a member of the Settlement Class.  (*See* Mot.

2   at 16.)

3          Nonetheless, the amount of the incentive award for Plaintiff does not preclude

4   this Court from granting preliminary approval of the Settlement Agreement.  Like with

5   fees for Settlement Counsel, the Settlement Agreement does not depend on Plaintiff

6   receiving any incentive award.  (*See* Settlement Agreement at 15.)  Accordingly,

7   because the Court will ultimately decide what to award Plaintiff, the incentive award

8   does not prevent the Court from preliminarily approving the Settlement Agreement.

9   The Court will revisit the issue of the incentive award at the Final Fairness Hearing.

10  *See Cisneros*, 2021 WL 3812163, at *9.

11                 **d.      The Proposed Settlement Treats the Classes Equally**

12         As for the two sub-classes, the Settlement Agreement provides the two classes

13  relief based on the alleged harm.  For the National Settlement Class, it is reasonable

14  and fair to reimburse them for the marked-up fees.  For the California Settlement Sub-

15  Class, it is reasonable and fair to credit their account or otherwise reverse any charges

16  from a marked-up fee that was assessed to their account but was never paid by the

17  borrower.  Both sub-classes will submit the same form.  Therefore, the Settlement

18  Agreement does not treat the classes differently.  *See In re Volkswagen*, 2016 WL

19  4010049, at *16.

20                 **e.      The Proposed Settlement Appears Fair, Reasonable,**
                            **and Adequate in Light of the Other Factors Considered**
21

22                 **i.      Legal Standard**

23         Previously, the Ninth Circuit held that district courts "should scrutinize

24  agreements for 'subtle signs that class counsel have allowed pursuit of their own self-

25  interests . . . to infect the negotiations[ ]" where the matter settles before class

26  certification.  *See Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting

27  *In re Bluetooth*, 654 F.3d at 947); *also Staton*, 327 F.3d at 959–64 (providing factors

28  district courts considered under a prior version of Fed. R. Civ. P. 23(e)); *Hanlon*, 150

                                              21

1    F.3d at 1026 (same). District courts were to consider the following factors: (1) the

2    strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of

3    further litigation; (3) the risk of maintaining class action status throughout the trial; (4)

4    the amount offered in settlement; (5) the extent of discovery completed and the stage

5    of the proceedings; (6) the experience and views of counsel; (7) the presence of a

6    governmental participant; and (8) the reaction of the class members to the proposed

7    settlement. *See Briseño*, 998 F.3d at 1023 (citations omitted).

8        In addition, the Ninth Circuit "identified three of those signs [that class counsel

9    have allowed pursuit of their own self-interests to infect the negotiations]:"

10        (1) "when counsel receive[s] a disproportionate distribution
of the settlement"; (2) "when the parties negotiate a 'clear

11        sailing arrangement,'" under which the defendant agrees
not to challenge a request for an agreed-upon attorney's

12        fee; and (3) when the agreement contains a 'kicker' or
'reverter' clause that returns unawarded fees to the

13        defendant, rather than the class.

14    *Briseño*, 998 F.3d at 1023 (quoting *In re Bluetooth*, 654 F.3d at 947).

15        Following amendments to Rule 23(e) in December 2018, however, the Ninth

16    Circuit has held that "courts must apply *Bluetooth*'s heightened scrutiny to post-class

17    certification settlements in assessing whether the division of funds between the class

18    members and their counsel is fair and 'adequate.'" *Briseño*, 998 F.3d at 1025 (quoting

19    Fed. R. Civ. P. 23(e)(2)(C). The Court proceeds with analysis and determines that the

20    Settlement Agreement is fair, reasonable, and adequate.

21                 **ii.**      **Analysis**

22        The first factor on attorneys' fees does not weigh against approving the

23    Settlement Agreement. Fees of around $8 million out of a potential Gross Settlement

24    Amount of over $53 million means that fees will not exceed the 25% benchmark. That

25    is not a disproportionate amount. *See In re Bluetooth*, 654 F.3d at 943.

26        The second factor regarding the risks, expense, complexity, and likely duration

27    of future litigation favors approving the Settlement Agreement. Going to trial to prove

28    a RICO conspiracy is no easy task, and this case involved complex processes

1   regarding property valuations, which would also be confusing to explain to a jury.

2   Moreover, an appeal is likely whatever the outcome at trial.  Such a posture supports

3   approving the Settlement Agreement.  *See Churchill Village, L.L.C.*, 361 F.3d at 576.

4         The third factor on the risk of maintaining the class also favors approving the

5   Settlement Agreement.  Although Plaintiff was able to produce evidence sufficient to

6   establish that common questions "are capable of being established through a

7   common body of evidence, applicable to the whole class[,]" *Olean*, 31 F.4th at 666,

8   the next stage requires Plaintiff to show that each class member has suffered an injury-

9   in-fact based on evidence adduced at trial, a much more difficult task, *see id.* at 667.

10         The amount offered in the settlement potentially weighs against approving the

11   Settlement Agreement given the possibility of treble damages from RICO claims, but

12   "[i]t is well-settled law that a cash settlement amounting to only a fraction of the

13   potential recovery does not per se render the settlement inadequate or unfair."  *In re*

14   *Mego*, 213 F.3d at 459 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

15   615, 628 (9th Cir. 1982)).  However, "courts generally determine fairness of an antitrust

16   class action settlement based on how it compensates the class for past injuries,

17   without giving much, if any, consideration to treble damages."  *Rodriguez*, 563 F.3d at

18   964.  RICO cases, like antitrust cases, similarly offer treble damages, and "treble

19   damages are a fact of life[,]" *id.*, but the Ninth Circuit has "never precluded courts from

20   comparing the settlement amount to both single and treble damages[,]" and "[b]y the

21   same token, [has] not required them to do so in all cases."  *Id.* at 965.  That is because,

22   at least in the Ninth Circuit, there is a strong tradition of deferring to the private

23   consensual decisions of the parties.  *See id.* (citing *Hanlon*, 150 F.3d at 1027).  As a

24   result, the Ninth Circuit has emphasized that:

25           'the court's intrusion upon what is otherwise a private
        consensual agreement negotiated between the parties to a

26           lawsuit must be limited to the extent necessary to reach a
        reasoned judgment that the agreement is not the product

27           of fraud or overreaching by, or collusion between, the
        negotiating parties, and the settlement, taken as a whole, is

28           fair, reasonable and adequate to all concerned.'

1    *Id.* (quoting *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625)).

2    Here, the Court concludes that there is no reason to intrude upon the privately-

3    ordered agreement between the parties because there is no indication that the

4    agreement was produced by fraud, collusion, overreaching, or other bad-faith actions.

5    *See id.* In particular, and as explained before, *see supra* Parts IV.B.2.iii and **Error!**

6    **Reference source not found.**, the payouts to Plaintiff and Settlement Counsel will be

7    determined by the Court and do not affect the validity of the Settlement Agreement.

8    Finally, this is the preliminary approval stage, and the Court must still consider

9    and respond to any objections. *See* Fed. R. Civ. P. 23(e)(5). As it is, the Settlement

10   Agreement includes a provision stating that Settlement Counsel or Ocwen may nullify

11   the Settlement Agreement if more than 1,000 individuals opt-out of it. (*See*

12   Settlement Agreement at 16 ("If 1,000 or more potential members of the Settlement

13   Class properly and timely opt out of the Settlement, then the Settlement may be

14   deemed null and void upon notice by Ocwen or Class Counsel without penalty or

15   sanction.").) Thus, if some members believe that Plaintiff was a particularly weak

16   representative and they think they could do better than Plaintiff at trial, they may opt-

17   out of the Settlement Agreement, and the Court will consider whether such a clause

18   can be invoked at the Final Fairness Hearing. *See In re Online DVD-Rental Antitrust*

19   *Litig.*, 779 F.3d 934, 948 (9th Cir. 2015); *Churchill Village, L.L.C.*, 361 F.3d at 577.

20   The fifth factor favors approving the Settlement Agreement. As mentioned

21   before, there has been over one million pages of documents produced throughout

22   the course of this nearly decade-long litigation. The parties have sufficient information

23   to apprise themselves of the strengths and weaknesses of their case and plenty of

24   time to review that information. Thus, the fifth factor favors approval.

25   The sixth factor on the views of counsel also favors approving the Settlement

26   Agreement. Attorney Tellis declares that, based on his 27 years of complex litigation

27   experience and his personal involvement in the prosecution of this case from start to

28   finish, he believes that "the Settlement is not only fair, reasonable, adequate, but also

1    is in the best interests of all Class Members in light of all known facts and

2    circumstances and should therefore be given preliminary approval by the Court."

3    (Tellis Decl. ¶ 8.)

4           The seventh factor on the presence of a government actor is irrelevant because

5    there are no government actors involved in this matter.  The eighth factor on the

6    reaction of class members must wait until the Final Fairness Hearing.

7    As for the three *Bluetooth* factors, the only that potentially applies is the concern for

8    reversionary settlement agreements.  *See In re Bluetooth*, 654 F.3d at 947.  There is no

9    concern here that Settlement Counsel will receive a disproportionate distribution of

10   the Gross Settlement Amount because the Court will ultimately approve the award to

11   Settlement Counsel.  Similarly, the Court has no concerns regarding a clear sailing

12   arrangement, as the Settlement Agreement prevents Plaintiff and Settlement Counsel

13   from objecting to the award of fees, not Ocwen.  (*See* Settlement Agreement at 15.)

14   As for the potentially reversionary aspects of the Settlement Agreement, while the

15   Court may have its suspicions that, like with the Settlement Administrator, Ocwen has

16   already earmarked money to pay, ultimately, whatever money is not given to

17   Settlement Class Members will be too little to effectively redistribute and meaningfully

18   increase the award each Class Member receives, which significantly to the Court, is

19   already sufficient to make them whole from their injury.  Granted, this may "create[ ] an

20   incentive for defendants to ensure as low a claims rate as possible so as to maximize

21   the funds that will revert[,]" which "might lead defendants to negotiate for a subpar

22   notice process, a more tedious claims process, or restrictive claim eligibility

23   conditions."  *Roes, 1–2*, 944 F.3d at 1058-59.  However, the Court has no such concern

24   here because of the extended window to make a claim, the streamlined nature of the

25   Claim Form, and the comprehensive information provided by the Class Notice.

26          Even after considering the *Bluetooth* factors to "smoke out potential

27   collusion[,]" the Court concludes that the Settlement Agreement is fair, reasonable,

28

1  and adequate.  *Briseño*, 998 F.3d at 1023.  Therefore, the Court grants preliminary

2  approval of the Settlement Agreement.

3  **V.  The Proposed Notice**

4    **A.  Legal Standard**

5        Federal Rule of Civil Procedure 23(c)(2) requires the "best notice practicable

6  under the circumstances."  To ultimately approve a class action settlement, a district

7  court must ensure that class members were notified of the proceedings, had the

8  opportunity to opt out or (for those who remain in the settlement) object to any of the

9  settlement's terms, and were provided the chance to appear at the fairness hearing.

10  Fed. R. Civ. P. 23(e)(1)-(5).  Rule 23 lists seven items that must be included in the

11  required notice.  *See* Fed. R. Civ. P. 23(c)(2)(B).  However, "Rule 23(e) simply requires

12  notice that describes the terms of the settlement in sufficient detail to alert those with

13  adverse viewpoints to investigate and to come forward and be heard."  *Roes, 1–2*, 944

14  F.3d at 1044 (quoting *In re Online DVD-Rental*, 779 F.3d at 946) (internal quotation

15  marks omitted).

16    **B.  Analysis**

17        The Court concludes that the Class Notice provides sufficient detail to alert

18  those with adverse viewpoints to investigate and to come forward and be heard.  *See*

19  *Roes, 1–2*, 944 F.3d at 1044.  The parties plan to appoint JND Legal Administration as

20  the Settlement Administrator, who is a reputable administrator with experience in

21  several prior cases involving complex and multi-district litigation.  (*See* Mot. at 23;

22  *generally* Decl. of Gina Intrepido-Bowden on Proposed Settlement Not. Prog. (ECF

23  No. 244-2) ("Intrepido-Bodwen Decl.") (providing the Vice President of JND Legal

24  Administration's declaration disclosing the countless prior cases it has worked on and

25  providing copies of the proposed notices to be sent physically and digitally).)  Ocwen

26  plans to pay for the costs of the Settlement Administrator up to $600,000, which the

27  Settlement Administrator estimates to cost no more than $586,000.  (*See* Mot. at 8.)

28  As stated before, the Class Notice contains a Table of Contents covering all of the

1    topics discussed in the notice, and the Class Notice provides ample means of

2    contacting the parties and learning how to object to or opt out of the Settlement

3    Agreement.  (*See* Class Notice at 3–11.)  However, the Class Notice must fill in the

4    blanks for the contact information.  Moreover, Settlement Counsel must finalize a date

5    by which time they will provide the Settlement Class notice of its request for attorneys'

6    fees, although they represent now that they will file the motion for fees at least 30 days

7    before the proposed objection/opt-out deadline.  (*See* Pl.'s Suppl. Br. at 3.)  As for the

8    means of providing the Class Notice, the Settlement Administrator plans to send the

9    notice via physical mail and email where possible, to broadcast the notice online using

10   targeted search queries and advertising campaigns, and to run a website and call

11   center.  (*See* Mot. at 23–24; Intrepido-Bodwen Decl. ¶ 13.)  Overall, the Settlement

12   Administrator anticipates the Class Notice having an "expected reach [ ] on the high

13   end of the 70-95% reach standard set forth by the FJC and will exceed that of other

14   court approved programs."  (Intrepido-Bodwen Decl. ¶ 35.)  In light of the above, the

15   Court concludes that the Class Notice satisfies the requirements of Rule 23(e) and the

16   Constitution.  *See In re Online DVD-Rental*, 779 F.3d at 946.

17                                         **ORDER**

18          For the reasons set forth above, the Court GRANTS Plaintiff's Motion for

19   Preliminary Approval of Class Settlement and Direction of Notice Under Federal Rule

20   of Civil Procedure 23(e) (ECF No. 244).  The parties are to proceed with updating the

21   [Proposed] Preliminary Approval Order (ECF No. 244-1 at 35–47) to be consistent with

22   the terms of this Order.  Specifically, the parties are to fill in any missing information

23   and update paragraph 25 to state that "Not fewer than thirty (30) days prior to the

24   date set by the Court to consider whether the Settlement should be finally approved,

25   Settlement Class Counsel shall file a motion or motions for Final Approval of the

26   Settlement Agreement and for Attorney's Fees and Costs for work performed in

27   connection with the Action."  (*See* ECF No. 244-1 at 43.)  Once the Court receives a

28   revised [Proposed] Preliminary Approval Order, the Court will sign it and set the date

1  for the Final Fairness Hearing, which will be scheduled for 150 days after entry of the

2  [Proposed] Preliminary Approval Order.  IT IS SO ORDERED.

3

4        IT IS SO ORDERED.

5  Dated:   **March 22, 2024**

   Hon. Daniel J. Calabretta
6  UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13  DJC3 – Weiner.14cv2597.Mot.Preliminary.Class.Settlement.Approval

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28