Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Peter Klausner (SBN 271902)
pklausner@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:    (818) 839-2333

Attorneys for Plaintiff
DAVID WEINER, individually, and on
behalf of other members of the general
public similarly situated

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WEINER, individually, and on behalf of other members of the public similarly situated,<br><br>                Plaintiff,<br>   vs.<br><br>OCWEN FINANCIAL CORPORATION, a Florida corporation and OCWEN LOAN SERVICING, LLC, a Delaware limited liability company,<br><br><br>     Defendants. | Case Number:  2:14-cv-02597-DJC-DB<br>**CLASS ACTION**<br><br>**PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD**<br><br>Date:  September 19, 2024<br>Time: 1:30 p.m.<br>Dept.: Courtroom 10<br><br>Hon. Daniel J. Calabretta<br><br>Action Filed:        November 5, 2014 |

**NOTICE OF MOTION AND MOTION**

**TO ALL THE PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 19, 2024, at 1:30 pm or at such other date and time as the Court may set, in Courtroom 10 of the Robert T. Matsui United States Courthouse, United States District Court for the Eastern District of California, counsel for Plaintiff David Weiner ("Plaintiff" or "Class Representative"), on behalf of a proposed Settlement Class of residential home loan borrowers whose loans were serviced by Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC, will and hereby does move the Court for an award of attorneys' fees, litigation costs and a class representative service award.

Plaintiff seeks an award of reasonable attorneys' fees in the amount of $7,915,313.25, reimbursable costs incurred in litigating the case in the amount of $953,106.45, and a service award of $5,000.00 for Plaintiff's work in the prosecution of this decade-old case.

As discussed in the Memorandum of Points and Authorities below, this request by Plaintiff and Settlement Class is consistent with authority in this Circuit.  As part of preliminary approval, notice was disseminated to Settlement Class Members, which disclosed all of the above requests and afforded Settlement Class Members an opportunity to object or comment on the requests; thus far, no class member has objected.

This motion is based upon this Notice of Motion, the below Memorandum of Points and Authorities in support thereof, the Declaration of Roland Tellis, the concurrently filed Motion for Final Approval of Class Settlement, all of the papers and pleadings on file in this action, and upon such other and further evidence the Court may be presented at the time of hearing.

1

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION .................................................................................... 1

II.    CLASS COUNSEL ZEALOUSLY LITIGATED A RISKY CASE FOR TEN
       YEARS.................................................................................................... 3

       A.    Plaintiff Alleges Defendants Charged Borrowers for Unlawfully
             Marked-Up Property Valuation Services ..................................... 4

       B.    Plaintiff's and Settlement Class Members' Allegations Survived
             Numerous Legal Challenges ........................................................ 4

III.   CLASS COUNSEL IS ENTITLED TO RECOVER REASONABLE
       LODESTAR FEES UNDER THE APPLICABLE FEE SHIFTING
       STATUTES ............................................................................................ 8

       A.    Legal Standard ............................................................................. 8

       B.    Class Counsel expended a reasonable number of hours advancing
             this complex litigation. ................................................................ 9

       C.    Class Counsel's Fee Request is Reasonable. ............................. 12

             1.    Class Counsel obtained an exceptional result. .................. 12

             2.    Class Counsel bore the entire risk of bringing this case on a
                   contingency basis. ............................................................. 14

             3.    Class Counsel provided exceptional representation of the
                   Settlement Class. ............................................................... 16

             4.    The fee requested is consistent with awards in other cases.......... 17

             5.    The requested fees are not the result of collusion. ........... 18

       D.    Class Counsel's Expenses Are Reasonable and Benefited the
             Settlement Class .......................................................................... 19

       E.    The Requested Service Award Is Reasonable ........................... 20

IV.    CONCLUSION ..................................................................................... 21

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARD

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) .................................................................... 9

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .................................................... 9, 12, 13, 18

*Boyd v. Bank of Am. Corp.*,
   No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ................ 20

*Bruno v. Quten Rsch. Inst., LLC*,
   No. SACV 11-00173 DOC EX, 2013 WL 990495 (C.D. Cal. Mar. 13,
   2013) ................................................................................................. 9

*Chalmers v. City of Los Angeles*,
   796 F.2d 1205 (9th Cir. 1986) ................................................................... 9

*Cisneros v. Airport Terminal Servs.*,
   No. 2:19-CV-02798-VAP-SPx, 2021 WL 3812163 (C.D. Cal. Mar. 26,
   2021) ................................................................................................ 21

*City of Burlington v. Dague*,
   505 U.S. 557 (1992) ................................................................................ 8

*Gutierrez, JR. v. Amplify Energy Corp.*,
   No. 8:21-cv-01628-DOC (C.D. Cal. Jan. 26, 2023), ECF Nos. 667, 726 ........... 10, 17

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..................... 11

*Hendricks v. StarKist Co.*,
   No. 13-CV-00729-HSG, 2015 WL 4498083 (N.D. Cal. July 23, 2015) ................... 16

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................. 8, 9, 10, 13

*Keegan v. Am. Honda Motor Co, Inc.*,
   No. CV1009508MMMAJWX, 2014 WL 12551213 (C.D. Cal. Jan. 21,
   2014) .......................................................................................... 11, 17

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................. 16

*In re Nexus 6P Prod. Liab. Litig.*,
   No. 17-CV-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ................... 13

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARD

*In re Omnivision Techs., Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. 13, 19

*In re Online DVD-Rental Antitrust Litig.,*
   779 F.3d 934 (9th Cir. 2015) ............................................................................ 12, 21

*Ontiveros v. Zamora,*
   No. 2:08-567 WBS DAD, 2014 WL 3057506 (E.D. Cal. July 7, 2014) ....................... 9

*Parkinson v. Hyundai Motor Am.,*
   796 F. Supp. 2d 1160 (C.D. Cal. 2010) ................................................................... 9

*Ramirez v. Trans Union, LLC,*
   No. 12-CV-00632-JSC, 2022 WL 17722395 (N.D. Cal. Dec. 15, 2022) ............ 10, 17

*Rodriguez v. W. Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) .................................................................................. 20

*Rolex Watch USA Inc. v. Zeotec Diamonds Inc.,*
   No. CV021089PSGVBKX, 2021 WL 4786889 (C.D. Cal. Aug. 24, 2021) ............... 18

*Rutti v. Lojack Corp.,*
   No. SACV 06–350 ................................................................................................... 19

*Sarabia v. Ricoh USA, Inc.,*
   No. 820 CV 00218 JLS KES, 2023 WL 3432160 (C.D. Cal. May 1,
   2023) ..................................................................................................................... 18

*Schroeder v. Envoy Air, Inc.,*
   No. CV 16-4911-MWF (KSX), 2019 WL 2000578 (C.D. Cal. May 6,
   2019) ................................................................................................................ 11, 17

*Sobel v. Hertz Corp.,*
   53 F. Supp. 3d 1319 (D. Nev. 2014) ......................................................................... 9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., &
   Prod. Liab. Litig.,*
   No. 810ML02151JVSFMOX, 2013 WL 12327929 (C.D. Cal. July 24,
   2013) ................................................................................................................ 11, 17

*In re Toys "R" Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act
   (FACTA) Litig.,*
   295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................ 13

*TransUnion LLC v. Ramirez,*
   141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021) ............................................................... 7

*Vincent v. Hughes Air West,*
   557 F.2d 759 (9th Cir. 1977) .................................................................................. 19

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARD

*Vizcaino v. Microsoft Corp.*,
290 F.3d 104350 (9th Cir. 2002) ...................................................................... 12, 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab.
Litig.*,
No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ...................... 11

*Waldrup v. Countrywide Fin. Corp.*,
No. 213CV08833CASAGRX, 2020 WL 13356468 (C.D. Cal. July 16,
2020) ........................................................................................................ 11, 17

*Walker v. Countrywide Home Loans, Inc.*,
98 Cal. App. 4th 1158 (Cal. Ct. App. 2002) ................................................... 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ...................................................................... 12, 14

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
445 F. Supp. 3d 508 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir.
2021) ........................................................................................................ 11, 17

*In Re Wells Fargo & Company Shareholder Derivative Litigation*,
*supra*, 2020 WL 1786159 (N.D. Cal. Apr. 7, 2020) ...................................... 11, 15

**Statutes**

18 U.S.C. § 1964(c) ...................................................................................... 8

28 U.S.C. § 1292(b) ...................................................................................... 5

Cal. Bus. & Prof. Code §§ 17200–17210 ....................................................... 4

Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788–1788.33 .............. 4

RICO Act, 18 U.S.C. §§ 1962 .................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................... *passim*

Federal Judicial Center, *Manual for Complex Litigation* § 21.71 (4th ed.) .......... 13

Manual for Complex Litigation, § 21.62, n. 971 (4th ed. 2013) ........................ 21

4 Newberg on Class Actions § 11:38 (4th ed.) .............................................. 21

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2     **I.      INTRODUCTION**

3          For ten long years, Plaintiff's counsel doggedly pursued Defendants Ocwen

4     Financial Corporation and Ocwen Loan Servicing, LLC (hereinafter "Defendants" and/or

5     "Ocwen"), for allegedly misleading borrowers into believing they were reimbursing

6     Ocwen for the amounts it paid to vendors for property valuation products known as

7     Broker Price Opinions ("BPOs") and Hybrid Valuations ("Hybrids").  In fact, the products

8     included an alleged hidden vendor "reconciliation" service, which Plaintiff contends was

9     neither disclosed nor a necessary or appropriate component of the BPOs and Hybrids.

10    As a result, borrowers were charged tens of millions of dollars for hidden junk fees.

11         Describing the litigation as protracted and contentious would be an

12    understatement.  As the lengthy case docket reflects, every fact was disputed, every

13    legal argument was contested, and every litigation tool was used by Ocwen to try and

14    derail the litigation.  Additionally, over the past decade, the case was assigned to three

15    different District judges who granted class certification, then decertification, then

16    reconsideration, and then class certification again.  Finally, after months of intensive

17    settlement negotiations between experienced counsel for Plaintiff and Ocwen, and with

18    the able assistance of mediators Hon. Dickran Tevrizian (Ret.) of JAMS and Robert

19    Fairbank, Esq., of Fairbank ADR (on the eve of trial), the parties finally reached a

20    settlement.

21         Along the way, Plaintiff faced enormous financial and legal risk pursuing a

22    complex legal theory.  Indeed, in granting preliminary approval, this Court acknowledged

23    the risk and complexity of the case noting that "[g]oing to trial to prove a RICO

24    conspiracy is no easy task, and this case involved complex processes regarding

25    property valuations, which would also be confusing to explain to a jury.  Moreover, an

26    appeal is likely whatever the outcome at trial." ECF No. 249 at 17.

27         Despite these hurdles, Plaintiff's counsel persisted, and achieved a remarkable

28    result.  As detailed in Plaintiff's accompanying motion for final approval of Class Action

Settlement, Ocwen agreed to pay *unlimited* claims for reimbursement by class members for BPO and Hybrid fees assessed and paid, *without any cap on the total amount paid to each class member*.  Specifically, (1) Nationwide Settlement Class Members can seek reimbursement of $60 for *each* BPO fee paid and $70 for *each* Hybrid fee paid during the class period and (2) California Settlement Sub-Class Members who continue to have loans serviced by Ocwen can seek a reversal of $60 for *each* unpaid BPO fee and $70 for *each* unpaid Hybrid fee assessed by Ocwen during the class period.  Importantly, the average alleged mark-up of the BPO and Hybrid fees at issue in the case are $56 and $66 respectively, so settlement Class Members are receiving a reimbursement amount which **exceeds** the average amount of the alleged fee mark-up.  In other words, the Settlement provides Class Members with *complete relief*.

Additionally, the Settlement Agreement requires Ocwen to implement an important change to its business practices.  Within 30 days after entry of a final approval order, Ocwen must modify its disclosures to borrowers, and in any applicable fee schedules, to identify the "reconciliation" service included in the vendors' BPO and Hybrid products.  Thus, going forward, borrowers will be fully apprised of the nature and scope of the BPO and Hybrids fees charged by Ocwen.  This meaningful injunctive relief ensures that the conduct at issue in this litigation will not recur.

This victory, of course, required a persistent effort and a substantial allocation of resources by Class Counsel.  Having achieved a favorable settlement in a complex and difficult case, Plaintiff and the Settlement Class now move the Court for an Order awarding attorneys' fees, litigation expenses, and a Class Representative incentive award.  Importantly, Class Counsel do not seek an undeserved windfall.  While substantial, the attorneys' fees requested are based solely on Class Counsel's lodestar, *without any enhancement*, and are indisputably reasonable.  The request seeks fair and reasonable compensation for Class Counsel's time and effort, which resulted in substantial benefits to hundreds of thousands of Settlement Class Members, only after almost ten years of difficult work, without any guarantee of recovery or reimbursement of

expenses, and consistent with the standards of Fed. R. Civ. P. 23(h) and the law of this Circuit.

Finally, the requested Class Representative service award represents payment for almost ten years of work by Plaintiff on behalf of the Settlement Class, including communicating with counsel, reviewing and responding to written discovery, and participating in depositions and preparing for trial.  Without individuals like the Class Representative—who was willing to step forward and provide his time, effort, and patience, with no guarantee of success—this case, as well as the result achieved, would not have been possible.

Through perseverance against well-funded adversaries, Class Counsel achieved an exceptional settlement for the Settlement Class.  Plaintiff respectfully submits that Class Counsel's efforts should now be fairly rewarded.

## II.     CLASS COUNSEL ZEALOUSLY LITIGATED A RISKY CASE FOR TEN YEARS

The valuable settlement compensation for the Settlement Class was not easily obtained, as evidenced in part by the nearly ten years of hard-fought litigation it took to reach this result. Those years brought significant challenges and a commensurate amount of work to meet them.

As summarized below, during the pendency of this case, Class Counsel undertook significant efforts to litigate this case on behalf of Settlement Class Members, including, but not limited to: (1) surviving numerous pleading challenges to Plaintiff's complaint; (2) serving and pursuing numerous discovery requests; (3) filing multiple discovery motions; (4) obtaining and reviewing over 1.5 million pages of documents; (5) pursuing and obtaining third-party discovery, including the production of thousands of documents from third-party Altisource; (6) taking and defending 27 depositions; (7) retaining multiple experts to help prove Plaintiff's RICO enterprise and to analyze Ocwen's complex loan data and proffer a damage model; (8) filing and prevailing on Plaintiff's Motion for Class Certification; (9) successfully opposing Ocwen's Motion for Summary Judgment; (10) opposing Ocwen's Motion to Decertify the Class and,

ultimately, reversing the Court's order granting the decertification via a motion for reconsideration; and (11) preparing the case for trial.

### A.   Plaintiff Alleges Defendants Charged Borrowers for Unlawfully Marked-Up Property Valuation Services

In November of 2014, Plaintiff filed this class action on behalf of himself and hundreds of thousands of similarly situated borrowers, alleging Ocwen, then the nation's largest loan servicer, misled residential homeowners into believing they were simply *reimbursing* Ocwen for the amounts it paid to vendors for certain property valuations known as BPOs and Hybrid Valuations—when, in fact, such charges included hidden mark-ups. ECF No. 1.  Thus, Plaintiff alleged the fees charged to—and in many cases paid by—borrowers for the property valuations at issue were neither a fair market price, nor consistent with industry standards.

In addition, Plaintiff alleged that by way of a 2009 corporate transaction, in which Ocwen's in-house loan servicer, Ocwen Solutions, was spun off into a supposed third-party loan servicer named Altisource, Ocwen concealed from borrowers that their property valuation charges were secretly bundled with additional fees for unnecessary and undisclosed "reconciliations" of their property valuation, which were neither authorized by the Uniform Deed of Trust, nor offered by any other vendor, and only served to line the pockets of Ocwen's executives who also owned shares in Altisource.

Plaintiff's complaint alleged violations of: (1) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210; (2) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and (d); and (3) the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788–1788.33, and various state law claims. ECF No. 1.

### B.   Plaintiff's and Settlement Class Members' Allegations Survived Numerous Legal Challenges

Ocwen responded to Plaintiff's Complaint with a motion to dismiss, which Plaintiff successfully opposed. *See* ECF No. 16 (July 29, 2015 Order denying motion to dismiss). Shortly thereafter, Ocwen filed a motion to stay the litigation pending the outcome of an

1    appeal in another case in which Ocwen was a defendant, which Plaintiff also

2    successfully opposed. *See* ECF No. 31 (March 11, 2016 Order denying motion to stay).

3    The parties then began in discovery process, which was highly contentious

4    throughout the proceedings and involved extensive meet and confer efforts and motion

5    practice. Indeed, Plaintiff moved aggressively to develop a factual and evidentiary record

6    sufficient to certify the class, filing two motions to compel responses to his written

7    discovery requests within approximately three months of discovery opening. *See* ECF

8    Nos. 40, 43.

9    On September 7, 2016, while those motions were pending, Ocwen filed a motion

10   pursuant to 28 U.S.C. § 1292(b) to certify for interlocutory review the question of whether

11   the Court's order denying Ocwen's motion to dismiss and the dismissal order in a

12   separate case against Ocwen created an intra-circuit split of authority. ECF No. 48.

13   Plaintiff opposed that motion, ECF No. 52, and the Court denied it on June 28,

14   2017. ECF No. 100. In the interim, the parties continued to litigate discovery disputes

15   before the magistrate judge. *See* ECF Nos. 61, 65, 73.

16   Following an intense pre-certification discovery process, which included heavy

17   motion practice before a Magistrate Judge, on January 30, 2017, Plaintiff moved to

18   certify a nationwide class (and two sub-classes) of similarly situated borrowers pursuant

19   to Rule 23(b)(3).  Plaintiff's motion explained that common questions predominate

20   because Plaintiff's claims are premised on classwide evidence of Ocwen's conduct. ECF

21   No. 93 at 17. Plaintiff further explained that class members' damages could likewise be

22   proven through classwide evidence, including expert testimony and Ocwen's own

23   records and loan data.  *Id.* at 18–19.  Ocwen opposed certification, arguing that Plaintiff's

24   classwide evidence was not sufficient to resolve which borrowers actually paid the

25   unlawful fees.  ECF No. 102 at 8.

26   On September 29, 2017, and "unpersuaded by Ocwen's claim that the facts here

27   turn on borrower-specific factual circumstances" (ECF No. 102 at 8), this Court held that

28   Plaintiff's classwide evidence, including his expert report, was "sufficient for purposes of

class certification" under Rule 23(b)(3). *Id*. at 12. Accordingly, the Court certified the

following classes:

> **Nationwide Class**: All residents of the United States of America who have or had a loan serviced by Ocwen Financial Corporation or Ocwen Loan Servicing, LLC and who paid for one or more Broker Price Opinions or Hybrid Valuations charged by Ocwen Financial Corporation or Ocwen Loan Servicing, LLC through Altisource, from November 5, 2010 through the present.

> **California Paid Sub-Class**: All residents of the State of California who have or had a loan serviced by Ocwen Financial Corporation or Ocwen Loan Servicing, LLC and who paid for one or more Broker Price Opinions or Hybrid Valuations charged by Ocwen Financial Corporation or Ocwen Loan Servicing, LLC through Altisource, from November 5, 2010 through the present.

> **California Assessed Sub-Class**: All residents of the State of California who have or had a loan serviced by Ocwen Financial Corporation or Ocwen Loan Servicing, LLC and to whom charges for one or more Broker Price Opinions or Hybrid Valuations were assessed to their mortgage account by Ocwen Financial Corporation or Ocwen Loan Servicing, LLC through Altisource, from November 5, 2010 through the present.

*Id*. at 13–14.

On October 13, 2017, Ocwen sought permission to appeal the class certification

ruling pursuant to Rule 23(f). *See* ECF No. 200-1 at 10. Ocwen argued, *inter alia*, that

the district court "failed to conduct the required Rule 23 analysis of whether the elements

of each cause of action are appropriate for class-wide determination." *Id*. The Ninth

Circuit summarily denied the petition. *Id*.

After the Court certified the class, Plaintiff continued to aggressively fight to obtain

necessary discovery from Ocwen, filing additional motions to compel on January 8, May

3, July 20, and August 17, 2018. *See* ECF Nos. 106, 130, 144, 146. Plaintiff also sought

and obtained leave to disseminate class notice to the certified classes. ECF No. 160.

By June 2019, discovery had involved **at least 14 fact depositions, 439 written**

**discovery requests propounded on Ocwen, 12 expert reports, and 11 expert**

**depositions**.

On June 28, 2019, Ocwen moved for summary judgment, arguing that Plaintiff's

classwide evidence was insufficient as a matter of law to prove that each class member

paid, or will pay, the valuation fees assessed on their loans. ECF No. 164. Plaintiff

opposed that motion with the support of three expert witness reports. ECF No. 175. Citing Plaintiff's expert report, the Court rejected Ocwen's argument that Plaintiff's classwide evidence was insufficient as a matter of law to prove that each class member paid, or will pay, the valuation fees assessed on their loans. ECF No. 181 at 17–18 (whether fees were paid "still presents a factual dispute.")

Approximately a month later, the parties filed a joint notice of trial readiness and began preparing in earnest for trial. ECF No. 183. However, on September 20, 2021, with a trial date of March 7, 2022, quickly approaching, Ocwen moved to decertify the class, arguing that that the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021), issued three months earlier, mandated decertification. ECF No. 194. The Court agreed and decertified the class on August 3, 2022. Although the Court acknowledged that Judge England previously found Rule 23's predominance requirement satisfied (ECF No. 219 at 6–8, 10–11), the Court stated that "the crux of the inquiry in the instant matter is whether the Supreme Court's decision in *TransUnion* changes Judge England's finding of predominance." *Id.* at 9.  The Court concluded that it did.  *Id.* at 9–12.

On August 17, 2022, Plaintiff filed a motion for reconsideration of the Court's August 3, 2022, decertification order, arguing that the order was been based on Ocwen's erroneous interpretation of *TransUnion*.  ECF No. 220. Plaintiff also filed a motion for permission to appeal decertification ruling to the Ninth Circuit Court of Appeals pursuant Rule 23(f). *See, e.g.*, ECF No. 226.

On February 28, 2023, this Court granted Plaintiff's motion for reconsideration, and vacated its earlier decertification order. ECF No. 227.

On May 18, 2023, this Court reset this case for trial on November 27, 2023. Shortly before trial, on October 5, 2023, the Court denied, in part, Plaintiff's motion to compel Ocwen's corporate witness who are outside the subpoena power of the Court to provide live testimony at trial, which could have adversely affected Plaintiff's presentation of his case at trial. ECF 236.On October 11, 2023, days before the pretrial conference

1    and while the parties were preparing for trial, they reached the Settlement that is now

2    before the Court. ECF No. 238.

3         As detailed above, Class Counsel fought hard to protect the interests of

4    Settlement Class Members.  As the outcome reflects, Class Counsel showed dedication

5    to investigating, prosecuting, and resolving this action over the course of nearly ten

6    years.

7    **III.    CLASS COUNSEL IS ENTITLED TO RECOVER REASONABLE LODESTAR**
         **FEES UNDER THE APPLICABLE FEE SHIFTING STATUTES**

8         **A.    Legal Standard**

9         Class Counsel seek recovery of their lodestar, without enhancement, incurred in

10   this decade-old, heavily litigated case pursuant to the fee-shifting provisions of Plaintiff's

11   certified RICO and UCL claims. *See* 18 U.S.C. § 1964(c) (authorizing recovery of RICO

12   attorneys' fees); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1179

13   (Cal. Ct. App. 2002) (authorizing attorney's fees to a prevailing UCL plaintiff pursuant to

14   Code of Civil Procedure section 1021.5).

15        Interpreting other statutes for which Congress permits an award of "reasonable

16   attorney's fees" to the prevailing party, the Supreme Court held that "[t]he most useful

17   starting point for determining the amount of a reasonable fee is the number of hours

18   reasonably expended on the litigation multiplied by a reasonable hourly rate"—the

19   lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (analyzing 22 U.S.C. § 1988,

20   which permits courts to award "a reasonable attorney's fee" to "the prevailing party").

21   "This calculation," the Supreme Court explained, "provides an objective basis on which

22   to make an initial estimate of the value of a lawyer's services." *Id.* The Court reaffirmed

23   that the "'lodestar' figure has, as its name suggests, become the guiding light of our fee-

24   shifting jurisprudence." *City of Burlington v. Dague*, 505 U.S. 557, 559, 562 (1992)

25   (citations omitted). Moreover, the Court established a 'strong presumption' that the

26   lodestar represents the 'reasonable' fee…'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886,

27   898 (1984)).

28

1     Lodestar fees are commonly awarded to Class Counsel in class action settlements

2  reached under similar circumstances here.  *See Ontiveros v. Zamora*, No. 2:08-567 WBS

3  DAD, 2014 WL 3057506, at *15 (E.D. Cal. July 7, 2014) (noting "the lodestar method is

4  most often applied in class actions brought under fee-shifting statutes or those where the

5  relief obtained is not easily monetized, it may be used in common fund cases as well");

6  *Bruno v. Quten Rsch. Inst., LLC*, No. SACV 11-00173 DOC EX, 2013 WL 990495, at *3

7  (C.D. Cal. Mar. 13, 2013) ("'the 'lodestar method' is appropriate in class actions brought

8  under fee-shifting statutes" (*quoting In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d

9  935, 941 (9th Cir. 2011)); *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1325-26 (D. Nev.

10  2014) (concluding that "the lodestar method is the appropriate method for calculating fees"

11  under fee-shifting statutes and citing California and Ninth Circuit authorities).

12     An attorney's lodestar is calculated by multiplying the number of hours reasonably

13  expended on the litigation by a reasonable hourly rate.  *In re Bluetooth*, 654 F.3d at 941.

14  "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the

15  community ... are satisfactory evidence of the prevailing market rate." *Chaudhry v. City of

16  Los Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014). Additionally, "Courts may find

17  hourly rates reasonable based on evidence of other courts approving similar rates or

18  other attorneys engaged in similar litigation charging similar rates." *Parkinson v.

19  Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010).  The lodestar

20  computation "need entail neither mathematical precision nor bean counting . . . [courts]

21  may rely on summaries submitted by the attorneys and need not review actual billing

22  records.'"  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015)

23  (citation omitted).  And "[a] request for attorney's fees should not result in a second major

24  litigation." *Hensley*, 461 U.S. at 433 ("Where a plaintiff has obtained excellent results, his

25  attorney should recover a fully compensatory fee.")

26     **B.     Class Counsel expended a reasonable number of hours advancing
         this complex litigation.**

27  To assist the Court in evaluating the reasonableness of the time spent on this

28

litigation, Class Counsel have presented a summary of their hourly time records. Declaration of Roland Tellis ("Tellis Decl."), at ¶ 49.  As of May 31, 2024, Class Counsel spent 10,573.65 billable hours litigating this case, yielding a total lodestar of $7,915,313.25.  *Id*. The figure does <u>not</u> include any time Class Counsel will incur in the future seeking final approval of the settlement or ensuring the proper administration of the Settlement, including responding to inquiries from Settlement Class Members, interacting with the notice and claims administrator, and generally overseeing the implementation of the Settlement. *Id*. A summary of the hours worked and current lodestar, sorted by task categories, is as follows:

| BARON & BUDD TIME SUMMARY | | |
| --- | --- | --- |
| **Work Description** | **Hours** | **Lodestar** |
| Case Investigation and Factual Research | 137.30 | $118,419.50 |
| Client and Class Member Communications | 35.00 | $32,235.00 |
| Pleadings, Briefs and Legal Research | 2,913.40 | $2,468,496.75 |
| Discovery and Document Review | 5,227.95 | $3,173,530.50 |
| Experts | 254.00 | $287,806.50 |
| Mediation and Settlement Negotiation | 171.20 | $182,976.00 |
| Case Management, Litigation Strategy and Court Appearances | 1,834.80 | $1,651,849.00 |
| **TOTAL** | **10,573.65** | **$7,915,313.25** |

As detailed below, Class Counsel's billing rates are consistent with those charged by similarly experienced counsel in this Circuit.  *See, e.g.*, *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022 WL 17722395, at *9 (N.D. Cal. Dec. 15, 2022) (approving hourly rates ranging "from $1,325 to $560 for partners and associates, and $485-$455 for 'litigation support' and paralegals"); *Gutierrez, JR. v. Amplify Energy Corp.*, No. 8:21-

cv-01628-DOC (JDEx) (C.D. Cal. Jan. 26, 2023), ECF Nos. 667, 726 (standard hourly rates of $650-$1,010/hour for partners, $640-$675/hour for associates, and $525/hour for discovery/document review attorneys were "consistent with market rates"); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 527 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (approving hourly rates up to $1,075 for partners and $660 for associates); *Waldrup v. Countrywide Fin. Corp.*, No. 213CV08833CASAGRX, 2020 WL 13356468, at *2 (C.D. Cal. July 16, 2020) (approving Baron & Budd's hourly rates of $825 to $975 for partners, and $495 to $625 for associates, requested at ECF 479-1 at 16).[1]

And Class Counsel's hourly rates are consistent with those charged by similarly experienced counsel. Tellis Decl. at ¶ 45, citing 2018 Peer Monitor Public Rates survey (California hourly rates for lawyers practicing 20+ years range from $1,125 to $1,475 per hour); *see also Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018)*, aff'd sub nom. Hefler v. Pekoc,* 802 F. App'x 285 (9th Cir. 2020)) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals were reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *1 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable); *In Re Wells Fargo & Company Shareholder Derivative Litigation*, *supra*, 2020 WL 1786159, at * 12 (N.D. Cal. Apr. 7, 2020) (approving of class counsel's hourly rates up to $1,075 for partners and $660 for associates).

---

[1] *See also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig. ("Toyota UAL")*, No. 810ML02151JVSFMOX, 2013 WL 12327929, at *33 (C.D. Cal. July 24, 2013) (approving rates up to $950 per hour ten years ago); *Schroeder v. Envoy Air, Inc.*, No. CV 16-4911-MWF (KSX), 2019 WL 2000578, at *8 (C.D. Cal. May 6, 2019) (approving rates of up to $890 for partners and up to $750 for associates five years ago); *Keegan v. Am. Honda Motor Co, Inc.*, No. CV1009508MMMAJWX, 2014 WL 12551213, at *23 (C.D. Cal. Jan. 21, 2014) (approving class counsel's hourly rates up to $875 for partners and $595 for associates ten years ago).

Class Counsel litigated this case on a contingent basis for nearly a decade, without any assurance of victory and with the singular focus of maximizing the recovery for Settlement Class Members.  Class Counsel's prosecution of this case was vigorously opposed by experienced and skilled attorneys representing Ocwen zealously throughout the litigation.  Through perseverance against well-funded adversaries, Class Counsel was able to achieve an exceptional settlement for class members which provides for payments that exceed the amount of the markup at issue in the case.

### C.   Class Counsel's Fee Request is Reasonable.

To be sure, courts must ensure that fee awards are reasonable. *In re Bluetooth*, 654 F.3d at 941; *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294-95 n.2 (9th Cir. 1994). The relevant factors include (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 104850 (9th Cir. 2002).  Here, each of these factors supports the reasonableness of the award.

### 1.   Class Counsel obtained an exceptional result.

Despite the risks, Class Counsel negotiated a settlement that requires Ocwen to pay unlimited claims for reimbursement by class members for BPO and Hybrid fees assessed and paid, without any cap on the total amount paid to each class member. Specifically, (1) Nationwide Settlement Class Members can seek reimbursement of $60 for each BPO fee paid and $70 for each Hybrid fee paid during the class period, and (2) California Settlement Sub-Class Members who continue to have loans serviced by Ocwen can seek a reversal of $60 of each unpaid BPO fee and $70 for each unpaid Hybrid fee that was assessed by Ocwen during the class period.  Importantly, the average alleged mark-up of the BPO and Hybrid fees at issue in the case are $56 and $66 respectively, so Settlement Class Members are receiving a reimbursement amount which **exceeds** the average amount of the alleged fee mark-up.  In other words, the

1   Settlement provides Class Members with **complete relief.**

2          Additionally, the Settlement requires Ocwen to implement an important change to

3   its business practices: it must modify its disclosures to borrowers, and in any applicable

4   fee schedules, to identify the "reconciliation" service included in the vendors' BPO and

5   Hybrid products. Thus, going forward, borrowers will be fully apprised of the nature and

6   scope of the BPO and Hybrids fees charged by Ocwen.  This meaningful injunctive relief

7   ensures that the conduct at issue in this litigation will not recur.

8          Notably, during the lengthy period while this case was litigated, a large

9   percentage of Settlement Class Members severed their relationships with Ocwen due to

10  foreclosures and other loan default-related events, as well as loan refinancings due to

11  periods of lower interest rates.  Because Ocwen no longer has the ability to send

12  settlement checks directly to these Settlement Class Members, Class Counsel

13  negotiated a settlement structure that allows class members a lengthy opportunity — *a*

14  *full 18 months from preliminary approval* — to come forward and make claims for

15  reimbursement of the valuation fees at issue here.

16         The result Class Counsel secured for the Settlement Class is the central factor to

17  evaluate the reasonableness of a requested fee. *In re Bluetooth*, 654 F.3d at 942; *In re*

18  *Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *see also In re*

19  *Nexus 6P Prod. Liab. Litig.*, No. 17-CV-02185-BLF, 2019 WL 6622842, at *12 (N.D. Cal.

20  Nov. 12, 2019) ("The most critical factor is the results achieved for the class."); *Hensley* ,

21  461 U.S. at 424 (same); Federal Judicial Center, *Manual for Complex Litigation* § 21.71

22  (4th ed.) ("The "fundamental focus is the result actually achieved for class members.")

23  (citing Fed. R. Civ. P. 23(h) committee note). Indeed, avoiding years of additional, risky

24  litigation in exchange for immediate and significant benefits is a principled compromise

25  that works to the clear benefit of the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(C). In

26  short, the Settlement provides Settlement Class Members with significant value now, not

27  years from now. *See In re Toys "R" Us-Delaware, Inc.—Fair & Accurate Credit*

28  *Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014) ("Estimates of a

fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery often measured in years.").

Plaintiff believed in the strength of his case and was actively preparing to take it all the way to trial when the Settlement was reached. Had the parties not reached the Settlement, Ocwen intended to file a Rule 23(f) petition to the Ninth Circuit challenging the Court's order vacating its order decertifying the class. If Ocwen would have prevailed on that petition and subsequent appeal, it would have been catastrophic to the case. Even if the Ninth Circuit denied the petition, there is a significant chance that the trial would have been delayed pending the Ninth Circuit's decision.

Potential delay of the trial notwithstanding, as the Court recognized, Plaintiff faced tremendous risk proving an intricate, multi-party RICO fraud claim to a jury and, regardless of the outcome, he would face an inevitable appeal. *See* ECF 249 at 22–23. Avoiding years of additional, costly, and risky litigation in exchange for the immediate and significant Settlement benefits is a principled compromise to the clear benefit of the Settlement Class. This principle strongly supports the requested fees here.

As detailed below, in view of the risk and complexity of the case, the result here is, by any measure, an exceptional result for Settlement Class Members.

### 2. Class Counsel bore the entire risk of bringing this case on a contingency basis.

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Pub. Power Supply*, 19 F.3d at 1299. Indeed, it is an established practice to reward attorneys who, as here, assume representation on a contingent basis to compensate them for the risk that they might be paid nothing at all. *See id.* at 1299-1300. Such a practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney. *Id.*; *see also Vizcaino*, 290 F.3d at 1051.

Here, the contingent nature of the representation meant that, from the outset of the case, there was a significant risk of nonpayment to Class Counsel because of the risk of non-recovery by the Class.  Class Counsel represented the class on a purely contingent basis, investing considerable time and money in the prosecution of the action without any guarantee that those investments would ever be repaid.  *See In Re Wells Fargo & Company Shareholder Derivative Litigation,* 2020 WL 1786159, at * 9 (April 7, 2020) ("The risk that Co-Lead Counsel took in litigation on a contingency basis – a risk they have borne for more than three years – also weighs in favor of a substantial attorney's fee award.")  Class Counsel did so with the singular focus of maximizing the recovery of Settlement Class Members.  And Class Counsel's prosecution of this case was vigorously opposed by experienced and skilled attorneys who zealously represented Ocwen throughout the litigation.

To be sure, Plaintiff faced several material risks to recovery.  First, as this Court noted "this is a complex civil lawsuit involving federal RICO claims, which are notoriously difficult claims to provide, and an appeal would be likely regardless of the outcome at trial…."  ECF 249 at 17:16-18.  The Court's observations are particularly astute in light of the tangled web of corporate relationships that existed here, the need to parse out the roles of the members of the RICO "enterprise," and the confusing nature of the parties' roles in ordering and preparing the BPO and Hybrid property valuations at issue here.  Additionally, to debunk Ocwen's claim that Plaintiff did not pay any of the BPO and Hybrid fees at issue, Class Counsel was faced with the daunting task of tracking and explaining to the jury, through a financial accounting expert, a myriad of alpha-numeric labeled transactions in Ocwen's digital loan database that are neither intuitive nor easy to understand. Finally, the computation of damages in this case, *i.e.* whether Class Members were entitled to the full amount of the property valuations assessed or just the amount of the fee mark-up, was hotly contested and an open issue at trial.

Moreover, shortly before trial, the Court dealt a significant blow to Plaintiff's trial strategy by denying Plaintiff's motion to compel Ocwen's corporate witness who are

outside the subpoena power of the Court to provide live testimony at trial. ECF 236.

Had any of these risks materialized, they would have greatly diminished, if not eliminated, the potential recovery for the Settlement Class and increased the likelihood of nonpayment to Class Counsel.  Accordingly, given the obstacles Plaintiff faced at trial, a recovery that provides Settlement Class Members with more than 100% of the valuation fee mark-up amount is not only unquestionably fair and reasonable, it is a remarkable result.[2]

### 3.   Class Counsel provided exceptional representation of the Settlement Class.

Class Counsel are experienced in complex class litigation and have expertise with consumer fraud, mortgage fraud, RICO, and other matters at issue in this case.  They have been regularly selected as lead counsel in complex class action cases in this Circuit and throughout the country. Tellis Decl. at ¶¶ 31–38.

Class Counsel's considerable experience benefited the Settlement Class here. Among other things, it facilitated the retention of necessary experts and necessary discovery.  Because Class Counsel knew where to look and what to look for, they were able to serve targeted discovery right out of the gate and were ready to seek Court intervention proactively when Ocwen resisted. Ultimately, this led to favorable rulings for Plaintiff. Had Class Counsel's pursuit of these discovery materials been less targeted or less zealous from the start, the litigation would have undoubtedly drawn out even more, delaying the meaningful relief now available to the Settlement Class.

Class Counsel's qualifications and expertise were especially valuable assets in this case because this litigation was not easy.  Ocwen hired an army of effective counsel:

---

[2] Courts have approved fractional recoveries when the risk of proceeding to trial presents a substantial chance of recovering nothing.  *See Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (settlement amounting to a fraction of the potential total recovery was reasonable given the significant risks of going to trial); *Hendricks v. StarKist Co.*, No. 13-CV-00729-HSG, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015) (settlement representing "only a single-digit percentage of the maximum potential exposure" was reasonable given the defenses and potential weaknesses in the plaintiffs' case).

at last count, Ocwen engaged three major law firms (O'Melveny & Meyers, Orrick Herrington & Sutcliffe, and Paul Weiss Rifkind Wharton & Garrison) at various points in time and had proven that they had the resources and willingness to defend themselves through trial and appeals.  In the face of this formidable defense, the record shows that Class Counsel took their commitment and responsibilities to the entire Settlement Class seriously and provided excellent representation. Class Counsel's unwavering commitment to provide the time and labor necessary to advance this litigation weighs in favor of the fee request.

> **4.**     **The fee requested is consistent with awards in other cases.**

Overall, Class Counsel's blended average billing rate for the work described above is $748.58 per hour. Tellis Decl. at ¶ 51. This is in line with the average hourly rates in this Circuit and reasonable here given the skill, experience, and reputation of Class Counsel.  *See, e.g.*, *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022 WL 17722395, at *9 (N.D. Cal. Dec. 15, 2022) (approving hourly rates ranging "from $1,325 to $560 for partners and associates, and $485-$455 for 'litigation support' and paralegals"); *Gutierrez*, No. 8:21-cv-01628-DOC (JDEx) (C.D. Cal. Jan. 26, 2023), ECF Nos. 667, 726 (standard hourly rates of $650-$1,010/hour for partners, $640-$675/hour for associates, and $525/hour for discovery/document review attorneys were "consistent with market rates"); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 527 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (approving hourly rates up to $1,075 for partners and $660 for associates); *Waldrup*, 2020 WL 13356468, at *2 (approving Baron & Budd's hourly rates in 2020 of $825 to $975 for partners, and $495 to $625 for associates, requested at ECF 479-1 at 16).[3]

Additionally, recent data on the average hourly rates charged in this Circuit

---

[3] *See also Toyota UAL*, 2013 WL 12327929, at *33 (approving rates up to $950 per hour ten years ago); *Schroeder*, 2019 WL 20578, at *8 (approving rates of up to $890 for partners and up to $750 for associates five years ago); *Keegan*, 2014 WL 12551213, at *23 (approving class counsel's hourly rates up to $875 for partners and $595 for associates ten years ago).

provides further evidence in support of Class Counsel's hourly rates. Specifically, the "Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than eighty companies." *Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, No. CV021089PSGVBKX, 2021 WL 4786889, at *3 (C.D. Cal. Aug. 24, 2021). Numerous courts have turned to the annual Real Rate Report as a helpful guide. *Sarabia v. Ricoh USA, Inc.*, No. 820 CV 00218 JLS KES, 2023 WL 3432160, at *8 (C.D. Cal. May 1, 2023) (collecting cases).

The most recent Real Rate Report, based on data collected through Q2 of 2023 (i.e., not adjusted for the subsequent inflation in the last year), supports the reasonableness of Class Counsel's hourly rates. Specifically, it reflects hourly rates for litigation partners in Los Angeles of $1,159 (for the third quartile), with an average hourly rate of $840. *See* Tellis Decl. at ¶ 44.  For Los Angeles litigation associates, hourly rates are $431-$880 per-hour, with an average hourly rate of $680. *Id*.  These figures are well in line with those charged by Class Counsel here.

### 5.    The requested fees are not the result of collusion.

The Court has a duty to ensure that any fee award in a class action settlement is free of collusion—*i.e.*, a situation where a Class Counsel accepts lower class relief in exchange for higher attorneys' fees.  *In re Bluetooth*, 654 F.3d at 946.  In discharging that duty, the Ninth Circuit has held that district courts must carefully scrutinize class settlements negotiated *prior* to formal class certification to determine whether a class action settlement is the product of collusion among the negotiating parties.  *Id*. at 947.

As explained in detail in Plaintiff's concurrently filed motion for final approval of the Settlement, the Court can be assured that there has been no collusion among the parties.  First, the Settlement was negotiated on the eve of trial, *after* class certification, summary judgment, and the close of discovery.  Second, there is no evidence of collusion among the parties here.  Indeed, the settlement was reached only after multiple mediation sessions before two highly respected mediators Hon. Dickran Tevrizian (Ret.)

1   of JAMS and Robert Fairbank, Esq., of Fairbank ADR (on the eve of trial).  Finally, in

2   light of the significant uncapped monetary and nonmonetary relief to Settlement Class

3   Members in the Settlement Agreement, which is separate from and will not be

4   diminished in any way by the amount of fees the Court awards to Class Counsel,  this

5   Court should find that the fees sought are not a result of collusion.

### D.   Class Counsel's Expenses Are Reasonable and Benefited the Settlement Class

Class Counsel is entitled to reimbursement for reasonable expenses that are necessary and directly related to the prosecution of the action. *Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."); *Staton*, 327 F.3d at 974; Fed. R. Civ. P. 23(h). Reimbursable expenses include "'1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees.'"  *Johnson v. General Mills, Inc.*, No.: SACV 10-00061-CJC(ANx), 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013) ; *Rutti v. Lojack Corp.*, No. SACV 06–350 DOC (JCx), 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Here, Class Counsel incurred the following recoverable, necessary litigation costs in this case:

| DESCRIPTION | AMOUNT |
|---|---|
| Experts | $563,869.88 |
| Class Certification Notice | $233,460.45 |
| Deposition/Court Reporters | $85,530.61 |
| Business Travel & Meals | $25,992.98 |
| Document Preparation Services | $25,017.70 |
| Court Filing Fees | $7,080.61 |
| Legal Research | $4,726.37 |

| Trial Preparation Costs | $3,532.46 |
|---|---|
| Postage | $2,826.94 |
| Copies | $1,068.45 |
| **TOTAL** | **$953,106.45** |

The above-described costs are documented and were reasonable and necessary to prosecute this case.  Tellis Decl. at ¶ 53.  The expenditures were made for the direct benefit of the Settlement Class and are reimbursable.

### E.    The Requested Service Award Is Reasonable

The Settlement provides that the Court may, at its discretion, grant an incentive payment to Plaintiff in the amount of $12,500.  Plaintiff earned this incentive payment through his efforts on behalf of the Class over the course of many years.  However, in granting preliminary approval, this Court expressed "some concerns" with the proposed $12,500 incentive award and noted, instead, that "[i]ncentive awards of $5,000 are generally reasonable." ECF 249 at 19:18-21 (citing *Alberto*, 252 F.R.D. at 669).  Although Class Counsel sincerely believe that Plaintiff's decade-long effort to right a perceived wrong, his willingness to take his case through trial, and his success in changing Ocwen's business practices, all for the benefit of hundreds of thousands of consumers, warrants an enhanced incentive award, Plaintiff seeks a modified incentive award of $5,000.

"Incentive awards are fairly typical in class action cases…and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (internal citations omitted).  In weighing whether to grant an incentive award, courts have considered other factors including personal difficulties encountered by the class representatives and the duration of the litigation.  *See Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804,

1   at \*7 (C.D. Cal. Nov. 18, 2014) (citing *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp.

2   294, 299 (N.D. Cal. 1995); *see also*, 4 NEWBERG ON CLASS ACTIONS § 11:38 (4th ed.);

3   MANUAL FOR COMPLEX LITIGATION, § 21.62, n. 971 (4th ed. 2013).

4       As detailed in Class Counsel's declaration, over the course of ten years, Plaintiff

5   has protected the interests of the Class by spending a significant amount of time and

6   effort assisting in the litigation, including: providing facts and documents necessary for

7   the filing of a complaint, responding to written discovery which required numerous hours

8   working with Class Counsel reviewing and analyzing loan transactions, drafting written

9   discovery responses, and gathering hundreds of pages of documents. Tellis Decl. at ¶

10  56.  In addition, he sat for an all-day deposition, evaluated the terms of the Settlement

11  Agreement, and expressed his continued willingness to protect the Settlement Class

12  until the Settlement is finally approved and its administration completed.  *Id.*  Class

13  Counsel estimates that over the course of ten years, these efforts took more than 100

14  hours of his time.  *Id.*  Plaintiff has unquestionably earned an incentive award in the

15  amount of $5,000. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943

16  (affirming awards of $5,000); *Cisneros v. Airport Terminal Servs.*, No. 2:19-CV-02798-

17  VAP-SPx, 2021 WL 3812163, at \*9 (C.D. Cal. Mar. 26, 2021) ("Courts have generally

18  found that $5,000 incentive payments are reasonable." (citation omitted)).

19      In short, without Plaintiff's willingness to step forward and devote ten years of his

20  time, effort, and patience, with no guarantee of success, this case, as well as the result

21  achieved, would not have been possible.

22  **IV.    CONCLUSION**

23      For all the foregoing reasons, Plaintiff respectfully seeks an award of reasonable

24  attorneys' fees in the amount of $7,915,313.25, reimbursable costs incurred in litigating

25  the case in the amount of $953,106.45, and a service award of $5,000.00 for Plaintiff's

26  work in the prosecution of this decade-old case.

27

28

Dated:  June 12, 2024                Respectfully submitted,

/s/ Roland Tellis

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Peter Klausner (SBN 271902)
pklausner@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone: (818) 839-2333

Attorneys for Plaintiff
DAVID WEINER, individually, and on behalf
of other members of the general public
similarly situated

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 12, 2024, service of this document was accomplished pursuant to the Court's electronic filing procedures by filing this document through the ECF system.

/s/ *Roland Tellis*
Roland Tellis