UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WEINER, individually, and on behalf of other members of the public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OCWEN FINANCIAL CORPORATION, et al.,<br><br>Defendants. | No.  2:14-cv-02597-DJC-SCR<br><br>FINAL APPROVAL OF CLASS ACTION SETTLEMENT |

On March 28, 2024, the Court granted preliminary approval of the proposed class settlement.  Plaintiff now seeks final approval of that settlement (Final Approval Mot. (ECF No. 255)) and moves for approval of attorney's fees, costs, litigation expenses, and class representative awards (Attorney's Fees Mot. (ECF No. 256)).  Defendants do not oppose either motion.  The Court has not received, nor is it aware of, any objections to final approval.

For the reasons stated below, the Court will approve the settlement, award $7,915,313.25 in attorneys' fees, permit $953,106.45  in litigation costs, and grant service awards of $5,000 to the named Plaintiff.

////

////

# BACKGROUND

The Court previously discussed the factual background of this action in its first order addressing the Motion for Preliminary Approval of Class Settlement. (Prelim. Approval Order (ECF No. 249); Revised Prelim. Approval Order (ECF No. 251).)[1] In short, Plaintiff brought the present suit based on claims that Defendants had charged fees to borrowers that were not properly disclosed and were neither a fair market price, nor consistent with industry standards. This case had passed the class certification and dispositive motion stages and was set for trial before a settlement was reached by the parties. (*See* ECF No. 238.)

The Settlement Agreement proposed by the parties would make available to a reimbursement of $60.00 or $70.00 dollars to each Class Member (with the amount based on which they the fee they had paid). (Final Approval Mot. at 5.) The California Class would receive a credit or charge reversal for the same amount. (*Id.*) The amount provided to each Class Member is greater than the original fees that were charged. With a total class size of 330,377 members, the Agreement results in a total possible recovery of $53,826,220.00. (*Id.*)

In granting preliminary approval, the Court approved the Notice Program proposed by the parties, appointed Plaintiff as Settlement Class Representative, appointed Baron & Budd, P.C. as Settlement Class Counsel, and appointed JND Legal Administration as Settlement Administrator. Ryan Bahry, Director of JND, submitted a declaration with the Final Approval Motion in which he describes the efforts taken to provide notice to the parties under the Notice Program. (Bahry Decl. (ECF No. 255-1).) Bahry describes mailed notices (including attempts to follow up on mail returned as undeliverable), email notices, digital notices, internet search campaigns, press releases, the usage of a settlement specific website and email. (*Id.* 3–6.) At the time of

---

[1] The Court granted preliminary approval of the Settlement Agreement but ordered Plaintiff to file an updated proposed order. (ECF No. 249.) The Court subsequently used to issue it's "Revised Preliminary Approval Order. (ECF No. 251). Together, these two orders form the Court's preliminary approval of the Settlement Agreement.

filing, Bahry stated that JND had received 9,762 claims but was not aware of any objections and has only received 2 opt-outs. (*Id.* at 7.) At the final approval hearing, Class Counsel represented that there had still not been any objections and only 6 opt-outs.

The Court held a fairness hearing on September 19, 2024 (ECF No. 263) after which the Court took the matter under submission. Plaintiff's counsel subsequently filed a Supplemental Memorandum (Suppl. Mem. (ECF No. 264)) in support of their request for attorney's fees.

**MOTION FOR FINAL APPROVAL**

**I.      Final Class Certification is Appropriate**

As noted by the Court in it's preliminary approval order, Plaintiff succeed in litigating class certification on two occasions. Previously, three total sub-classes were certified. In moving for approval of the settlement, Plaintiff consolidated this to two sub-classes. The Court provisionally certified the class for purposes of settlement, finding that the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) had been met. (Revised Prelim. Approval Ord. at 1–2.) The Court's present findings on the adequacy of the class remain the same as there has been no change in the facts underlying the Court's determination and there have been no objections to the certification of the class. *See Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1008 (E.D. Cal. 2019) (collecting cases for the proposition that a court need not repeat its class certification analysis for final approval if the facts have not changed and no objections were raised). Accordingly, the Court adopts its prior finding that the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) as well as the Rule 23(b)(3) predomination requirement. The class is certified for purposes of this settlement. For the reasons stated in the prior order, the Court reaffirms the appointment of Plaintiff David Weiner as Class Representatives and Baron & Budd, P.C. as Class Counsel, for purposes of settlement.

3

## II. Adequacy of Notice

The Court also previously approved both the content of the Notice of Settlement and the means of distributing the Notice. (Prelim. Approval Ord. at 18; Revised Prelim. Approval Order at 4–5.) There have been no objections to the content and means of distribution for the Notice and their adequacy, as stated in the Court's Preliminary Approval Order, remain clear. As stated by in that Order:

> [T]he Class Notice provides comprehensive information about the Settlement Agreement. For instance, the Class Notice provides a Table of Contents where the Settlement Class can learn about the following topics: what the Class Notice contains; what the Class Notice is about; who is part of the Settlement Class; submitting a claim; receiving payment; understanding the class action process; the claims and rights released or waived; the consequences of doing nothing; how to opt-out and the consequences for doing so; how the lawyers will be paid; how to object to the settlement and the difference between objecting and opting-out; when and where the Final Fairness Hearing will be; and how to obtain more information.

(Preliminary Approval Order at 18.)

The Notice is adequate given "it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" and notifies members of the tentative class of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 338 (2011); *see also* Fed. R. Civ. P. 23(c)(2)(B).

The Court also continues to be satisfied with the procedure used to locate Class Members, provide the notices, and rectify where notices were returned undeliverable. *See* Fed. R. Civ. P. 23(c)(2)(B) & (e)(1). Per the Declaration provided by Ryan Bahry as representative for the Class Administrator, 330,505 postcard notices were mailed to

4

class members. (Bahry Decl. at 3.) After mail forwarding and new mailing attempts with updated addresses, only 16,576 of these notices were undeliverable. (*Id*. at 3–4.) Notices were also emailed to 250,963 email addresses associated with Class Members, 220,518 of which were delivered successfully. (*Id*. at 4.) Bahry also notes the broader notice efforts including the usage of the "Google Display Network" and "Responsive Search Ads" to provide digital advertisements to targeted relevant groups on the internet in conjunction with a website and email specific to this settlement. (*Id*. at 4–5.)

The notice procedures utilized satisfy the notice requirements under Rule 23(c)(2)(B). Bahry also states that the proposed settlement, along with relevant additional documents, were provided appropriate federal and state officials, as is required by the Class Action Fairness Act ("CAFA") pursuant to 28 U.S.C. § 1715(b). (Bahry Decl. at 1–2.)

### III. Sufficiency of the Settlement

At final approval, the Court must determine if the settlement is, as a whole, "fair, adequate, and free from collusion." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). This requires the Court to consider the *Hanlon* factors which are:

> [1.] the strength of the plaintiffs' case; [2.] the risk, expense, complexity, and likely duration of further litigation; [3.] the risk of maintaining class action status throughout the trial; [4.] the amount offered in settlement; [5.] the extent of discovery completed and the stage of the proceedings; [6.] the experience and views of counsel; [7.] the presence of a governmental participant; [and 8.] and the reaction of the class members to the proposed settlement.

*Lane*, 696 F.3d at 819.

The Court is also obligated to consider the factors described in *Bluetooth* to investigate "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946–47 (9th Cir. 2011).

The *Bluetooth* factors are:

> (1) "when counsel receive[s] a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class.

*See Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *In re Bluetooth*, 654 F.3d at 947).

In making its preliminary determination, the Court reviewed these factors (*see* Preliminary Approval Ord. at 22–26), but the Court now reconsiders these factors in full to ensure that the proposed settlement is fair, adequate, and free from collusion. In doing so, the Court is "mindful that the law favors the compromise and settlement of class action suits." *Carlin*, 380 F. Supp. 3d. at 1009.

### A. Strength of the Plaintiff's Case, Risk, Expense, Complexity, and Likely Duration of Further Litigation, and Risk of Maintaining Class Action Status Through Trial

In evaluating the strength of a case, the goal of the Court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). However, the Court need not "reach any ultimate conclusions concerning the contested issues of fact and law" regarding the underlying dispute. *Id.* at 1415. In general, lengthy litigation can be costly and time consuming for all parties and presents numerous risks to the parties. Because of this, courts recognize that "approval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Carlin*, 380 F. Supp. 3d at 1010 (internal citations and quotations removed).

The first three factors weigh in favor of granting settlement. Plaintiff's case

appears to have significant strength.  At the time of settlement, Plaintiff had successfully certified a class on RICO claims and was proceeding toward trial. However, as is well recognized, trial presents substantial risks to Plaintiff's ability to obtain relief, especially where complex claims are involved.  Moreover, as noted in Plaintiff's Motion seeking final approval, trial would undoubtedly impose substantial costs on all parties, regardless of whether Plaintiff was ultimately successful.  (Final Approval Mot. at 15–16.)  Additionally, Plaintiff correctly notes pre- and post-trial litigation of this case would undoubtedly be intense and lengthy.  Defendant Ocwen also apparently expressed an intent "to file a Rule 23(f) petition to the Ninth Circuit" which could risk delaying trial further and, even if Plaintiff were ultimately successful at trial, Defendants would undoubtedly vigorously challenge any verdict obtained, causing further delay and cost.

The Settlement Agreement the parties have reached not only circumvents the additional cost and time of further litigation but also provides relief in the form of the full amount of the relevant fee that each class member was charged.  In doing so it both affords a substantial degree (if not complete) relief for the harms alleged without sustaining the risk and expense of trial.  Under these facts, the Agreement presently before the Court provides clear benefits to both the Class and the named parties.  *See Churchill Village, L.L.C.*, 361 F.3d at 576; *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (*en banc*).  As such, these factors weigh in favor of approving the Settlement Agreement.

### B. The Amount Offered in Settlement

In considering whether to approve a settlement, "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  "The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural*

*Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

Given the complete lack of any objections in this case and the limited number of opt-outs received, the Court starts from a strong presumption that the terms of the settlement are reasonable. *Id.* The Court noted in its Preliminary Approval Order, the amount offered in settlement does not offer any compensation for treble damages that might have been obtained at trial, but that courts are not required to compare settlement amounts to treble damages and that there was no justification "to intrude upon the privately-ordered agreement between the parties" (Prelim. Approval Order at 23–24.) Given the fact that no objections to the settlement have been received, the Court finds this to still be true; there is no indication that the agreement was produced by fraud, collusion, overreaching, or other bad-faith actions. Moreover, the Agreement provides full or near-full recovery for past injuries. On this basis, this factor weighs in favor of approval.

### C. The Extent of Discovery Completed and the Stage of the Proceedings

While discovery can be beneficial in obtaining a fair settlement, "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (internal citations and quotations removed). To that end, a court may approve a proposed class settlement where the provided sufficient discovery "[to] allow[] the parties to form a clear view of the strength and weaknesses of their case[,]" *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013), and is the result of genuine arms-length negotiation. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528.

Here, this factor weighs strongly in favor of granting final approval. Discovery was completed at the time the agreement was reached. The parties had full information from which they could determine the strengths and weaknesses of their cases for themselves.

### D. The Experience and Views of Counsel

In the preliminary approval order, the Court quoted Attorney Roland Tellis, an attorney with 27 years of experience in complex litigation who has had extensive involvement with this case from its inception, as stating that he believes the settlement to be "not only fair, reasonable, adequate, but also is in the best interests of all Class Members in light of all known facts and circumstances and should therefore be given preliminary approval by the Court." (Decl. of Roland Tellis (ECF No. 244-1) ¶ 8.) Plaintiff's Motion for Final Approval similarly emphasizes that the settlement is in the best interest of class members. Thus, given Class Counsel's apparent experience and view that this settlement is fair, reasonable, adequate, and in the best interest of all Class Members, the Court finds that this factor weighs in favor of approval.

### E. The Reaction of the Class Members to the Proposed Settlement

As has been discussed above, there is a strong presumption of favorableness in the absence of a large number of objections. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525. As of the Fairness Hearing, the parties report that no objections have been filed. Moreover, only 6 opt-outs have been received while over 12,000 claims have been processed. Based on this evidence, it is clear that the reaction of Class Members to the settlement is overwhelmingly positive. Accordingly, this factor weighs in favor of approval.

### F. Absence of Collusion

In addition to the *Hanlon* factors, the Court must also consider whether the Settlement Agreement is the product of collusion. *See In re Bluetooth*, 654 F.3d at 946–47. The three signs of collusion identified by the Ninth Circuit are "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (internal quotations and citations removed).

Here, first factor is not present. Class counsel has requested $7,915,313.25 in fees. While a substantial amount, this only accounts for only roughly 15% of the maximum possible recovery by Class Members under the settlement agreement. The second factor is also not present as the Settlement Agreement does not prevent objections from Defendants. The final factor is partially present in effect, if not in description. While the settlement does not set aside a "fund" that reverts to the Defendants, unclaimed portions of the settlement will not be paid out and those funds will be kept by Defendants, thereby creating a potential incentive to ensure a low claim rate. *See Roes, 1–2 v. SFBSC Management, LLC*, 944 F.3d 1035, 1050–51 (9th Cir. 2019). However, in the absolute absence of any other signs of collusion, the Court has little concern about the presence of this *Bluetooth* factor. As stated at preliminary approval, the Court is particularly comforted by the extended window for class members to make a claim, the streamlined nature of the Claim Form, and the comprehensive information provided by the Class Notice. The positive response of Class Members is also encouraging in this regard.

In light of the above, it is clear that all evidence points to the absence of collusion in this settlement. Accordingly, this factor weighs in favor of approval.

### G. Conclusion

Given that the factors above all weigh in favor of settlement to some degree, the Court is convinced that this settlement is fair, reasonable and adequate as well as free from collusion. *Hanlon*, 150 F.3d at 1026; *see Lane*, 696 F.3d at 819; *see also In re Bluetooth*, 654 F.3d at 946-47. Accordingly, the Court grants Plaintiff's Motion for Final Approval of the Class Action Settlement (ECF No. 255).

## MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS

### I. Class Representative Service Award

Courts often afford modest compensation to Class Representatives based on the extra time required to represent the class as the named plaintiff to an action. "The

10

criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, Plaintiff has requested a $5,000.00 service award for each of the Class Representatives. An award of $12,500.00 is permitted by the Settlement Agreement and Plaintiff originally requested this full amount. But after the Court raised some concerns at the preliminary approval stage, Plaintiff voluntarily reduced this request to $5,000.00. (Attorney's Fees Mot. at 20–21.) An award of $5,000 is generally considered a presumptively reasonable service award by courts in the Ninth Circuit. *See Carlin*, 380 F. Supp. 3d at 1024. This award is also reasonable here. Plaintiff as been involved in this case since its inception 10 years ago and has been involved in all stages. Counsel represents that Plaintiff has taken more than 100 hours of his time in litigating this action over that time. (Attorney's Fees Mot. at 27.)

Based on the effort and risk undertaken by Plaintiff Weiner in reaching this settlement and the presumptively reasonable amount of this award, the Court finds that the requested service awards are reasonable and awards $5,000.00 to David Weiner for his roles as Class Representative.

**II.    Attorney's Fees**

Attorney's fees may generally be awarded in a settlement of a certified class action however, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. Class Counsel has requested $7,915,313.25 in attorney's fees. Defendants have not objected to this request.

The attorney's fees requested amount to approximately 14.7% of the maximum

possible recovery under the Settlement Agreement. Notably, regardless of the attorney's fees ultimately awarded, those fees *do not* reduce the amount recovered by Class Members and is paid by Defendants separately. Counsel also provides some information on the hours worked by attorneys in this action. Based on the hours worked and the total amount requested, Class Counsel is seeking an amount commensurate with a $748.60 an hour rate.

This rate lands on the high end of rates approved for attorneys in this district but still within the range of what courts consider to be reasonable. *See American Multi-Cinema, Inc. v. Manteca Lifestyle Ctr., LLC*, No. 2:16-cv-01066-TLN-KJN, 2024 WL 1312209, at *3 (E.D. Cal. Mar. 26, 2024); *see also Jones v. Tirehub LLC*, No. 2:21-cv-0564-DB, 2024 WL 2132611, at *11 (E.D. Cal. May 13, 2024). During the Fairness Hearing, Counsel also represented that the bulk of work performed by attorneys was done by partners due to the challenging nature of perusing RICO claims.

In light of the low value of the requested fees relative to the maximum potential recovery the Settlement Agreement affords, the fact that this award will not deduct from the possible recovery by Class Members, the lack of objection by anyone to the requested fee amount, the substantial nature of the relief afforded to Class Members under the Agreement, and that the effective hourly compensation rate falls within what is considered reasonable in this district, the Court will approve the request by Class Counsel Baron & Budd, P.C. for attorney's fees of $7,915,313.25.

### III. Costs

Class Counsel is entitled to reimbursement of litigation costs from the GSA in order to spread the costs of the suit amongst class members. *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1120 (9th Cir. 2002). "Such an award of expenses should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (E.D. Cal. 2007).

Here, Class Counsel seeks to recover costs for (1) $563,869.88 for experts, (2)

$233,460.45 in connection with issuing the Class Certification Notice, (3) $85,530.61 for depositions and court reporter costs, (4) $25,992.98 for business travel and meals, (5) $25,017.70 for document preparation services, (6) $7,080.61 for court filing fees, (7) $4,726.37 in legal research fees, (8) $3,532.46 in trial preparation costs, (9) $2,826.94 for postage, and (10) $1,068.45 for copies. (Attorney's Fees Mot. at 19-20.) Each of these requested costs falls within those that courts typically approve. *See In re Immune Response Securities Litigation*, 497 F. Supp. 2d at 1177-78. Defendants have not objected to the requested costs. Accordingly, the Court will grant Class Counsel's request for reimbursement of $953,106.45 in costs incurred while litigating this matter.

## CONCLUSION

For the above reasons, it is HEREBY ORDERED that:

1. The Court has jurisdiction over this action and the Settlement pursuant to 28 U.S.C. § 1332(d);

2. Except as otherwise specified herein, the Court for purposes of this Final Approval Order adopts all defined terms set forth in the Settlement Agreement;

3. Plaintiff's Motion for Final Approval of Class Action Settlement (ECF No. 255) is GRANTED and the Court approves the Settlement as fair, reasonable, and adequate and the result of arm's-length informed negotiations;

4. Plaintiff's Motion for Attorney's Fees, Costs, and Litigation Expenses (ECF No. 256) is GRANTED;

5. The Court CONFIRMS the appointment Baron & Budd, P.C. as Settlement Class Counsel;

6. The Court CONFIRMS the appointment of David Weiner as Settlement Class Representative;

7. The Court CONFIRMS JND Legal Administration as the Notice and Settlement Administrator that will oversee and administer the Settlement

Fund;

8. The Court GRANTS Settlement Class Counsel's request for attorneys' fees and costs, and AWARDS Settlement Class Counsel $7,915,313.25 in attorneys' fees and $953,106.45 in reasonable expenses, to be paid by Defendants;

9. The Court AWARDS a service award of $5,000 to the Settlement Class Representative David Weiner, to be paid by Defendants;

10. The Release from Section III of the Settlement Agreement (Dkt. 244-1 at ECF Page No. 18-19) shall take effect from the date of this order;

11. The individuals and entities listed in Appendix A to the Final Approval Order are excluded from the Settlement Class;

12. The Court hereby permanently bars and enjoins any Settlement Class Member from instituting or prosecuting any claims released pursuant to this Settlement against the Released Parties, as those terms are used and defined in the Settlement Agreement;

13. The Court further reserves and retains exclusive and continuing jurisdiction over the Settlement concerning the administration and enforcement of the Settlement Agreement and to effectuate its terms;

14. For the reasons stated in this Order, judgment is entered and the claims of Plaintiff David Weiner in this Action against Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC are dismissed with prejudice, without costs to any party, except as otherwise provided in this Order or in the Settlement Agreement; and

////
////
////
////
////

15. Under Rule 54(b) of the Federal Rules of Civil Procedure, no just reason exists for delay in entering final judgment. The Court accordingly directs the Clerk to enter final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure in accordance with this Order.

IT IS SO ORDERED.

Dated: **October 9, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 – weiner14cv02597.final_class_settlement